FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★ JUN 11 2021 ★

LONG ISLAND OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
―――――――――――――――――――――――X

ELIZABETH P. KRAMER,

    Plaintiff,

v.

JANET L. YELLEN, as Secretary of the
U.S. DEPARTMENT OF THE TREASURY
    (INTERNAL REVENUE SERVICE, agency),

    Defendant.

―――――――――――――――――――――――X

Case No. CV-21 3295

AZRACK, J.

TISCIONE, M.J.

**COMPLAINT**

**JURY TRIAL DEMANDED**

    Plaintiff, Elizabeth P. Kramer, as *pro se* litigant, brings her Complaint against the Defendant, Janet L. Yellen, as the Secretary of the U.S. Department of the Treasury, of which the Internal Revenue Service is a part, and alleges as follows:

### NATURE OF THE ACTION

1.    Plaintiff brings this action against her employer, the Internal Revenue Service ("IRS") of the U.S. Department of the Treasury ("Defendant"), pursuant to Section 501 of the Rehabilitation Act of 1973. Defendant engaged in discriminatory treatment of Ms. Kramer on the basis of her disabilities by failing to promote her, subjecting her to unequal terms and conditions of her employment, and retaliation.

## JURISDICTION AND VENUE

2.      This court has subject matter jurisdiction over the claim pursuant to 28 U.S.C. § 1331, as this action arises under the laws of the United States, namely, Section 501 of the Rehabilitation Act of 1973, 29 U.S.C. Section 791.

3.      Venue is proper pursuant to 28 U.S.C. §1391(b)(2) because the location of the IRS which employs Ms. Kramer is in this District, and all of the substantial events took place in connection with her employment there.

## EEOC FILING AND ADMINISTRATIVE PROCEDURES

4.      Ms. Kramer filed a charge of discrimination with the Equal Employment Oppurtunity Commission ("EEOC") on April 26, 2018.

5.      On March 18, 2021, the EEOC issued a Notice of Right to Sue and Ms. Kramer now files this action within ninety (90) days of receiving her Notice of Right to Sue from the EEOC. A true and correct copy of the Notice of Right to Sue is attached as Exhibit A.

## PARTIES

6.      At all times relevant hereto, Ms. Kramer is a resident and domiciliary of the State of New York, with her principal residence located in Moriches, NY 11955.

7.      Defendant Janet L. Yellen is the Secretary of the Department of the Treasury, of which the IRS is a part, a government agency organized and existing under and by virtue of the laws of the United States. The office that at all relevant times employed Ms. Kramer is located at 1040 Waverly Avenue, Holtsville New York, 11742, in the County of Suffolk.

## STATEMENT OF FACTS

8.      Ms. Kramer suffers from mental and physical disabilities, but with reasonable accommodations she has always been able to perform well in all of her positions during her employment at the IRS.

9.      Specifically, Ms. Kramer has bipolar disorder and her symptoms include mood swings, high anxiety, depression, panic attacks, rambling and racing thoughts.

10.     In addition, Ms. Kramer has several physical disabilities, including: vaso-vagal syncope disorder which causes her to pass out in certain circumstances; chronic migraines and chronic pain disorder in the her back which is exacerbated when standing for more than 10 minutes; pinched nerves in her neck and arms stemming from a car accident earlier in her life; osteo-arthritis, a degenerative disease that affects her knees, hands, arms, and meniscus and requires the use of a cane when her symptoms flare up; carpal tunnel syndrome in both hands, with 90% nerve damage in the right arm and 70% nerve damage in the left which limits her ability; mitral-valve prolapse; high blood pressure, for which she takes medication; obesity; and vertigo.

11.     Ms. Kramer's disabilities affect her neurological, musculoskeletal, and cardiovascular body systems and substantially limit her ability to engage in major life activities, including caring for herself, performing manual tasks, eating, sleeping, walking, standing, sitting, reaching, lifting, bending, speaking, learning, concentrating, thinking, communicating, sleeping, interacting with others, and working.

12.     Ms. Kramer was hired as a clerk at the IRS in Accounts Management on July 10, 2010 through the Abilities Program within the New York State Vocational Education Services for Individuals with Disabilities ("VESID") organization.

13.     Ms. Kramer's disabilities were documented when she was hired through the Abilities Program. The program is for people with disabilities, and to the best of her knowledge, all of her supervisors at the IRS were aware of her disabilities.

14.     Since 2010, Ms. Kramer held several positions at the IRS, including Management Assistant and Operational Management Assistant, prior to being hired as a Human Resource Assistant (HRA) to the Human Capital Office (HCO) in the Non-Competitive Action Center (NCAC) in September of 2014.

15.     Prior to Ms. Kramer's position in the NCAC, she was honored and recognized nationally as the "poster person" for an Equity Diversity and Inclusion (EDI) pilot mentorship program for individuals with disabilities.

16.     This pilot program was mentioned in her interview in 2014 for the HRA position in the NCAC, and documents relating to her participation were placed in her Employee Personal File, together with her request for a chair as a reasonable accommodation.

17.     Around December 2014 or January 2015, Ms. Nadine Howell ("Howell"), NCAC's Operation Chief, and Ms. Patricia LaFever, Ms. Kramer's first manager in the NCAC, were notified of her disabilities due to a Worker's Compensation Case.

18.     Since 2015, Ms. Kramer has, on several occasions, been subjected to offensive and derogatory comments about her disabilities, as well as other verbal and non-verbal gestures, by Mr. Joseph Tarlentino ("Tarlentino"), Ms. Kramer's manager, and by Howell.

19.     However, Ms. Kramer feared retaliation for filing grievances or complaints due to witnessing how other employees were harassed, discriminated, or retaliated against and therefore, she did not initially complain about her discriminatory treatment.

20.     For example, Ms. Kramer witnessed a coworker get terminated after being on leave due to a physical injury. The coworker informed Ms. Kramer that he filed a lawsuit after being fired by Howell and Tarlentino for requesting reasonable accommodations.

21.     Between 2015 and 2018, Tarlentino made comments such as "you have issues" and "you are not developed enough to be an HRS" to Ms. Kramer while pointing to his head with facial gestures for emphasis.

22.     During this same period, Tarlentino asked Ms. Kramer why she did not go back on Social Security due to her illness. In the same conversation, Tarlentino stated that he knew how a person with Bipolar acts due to knowing a relative with the condition, and that individuals with the illness are hypochondriacs. When Ms. Kramer told him the comment was inappropriate, Tarlentino made a gesture pointing his finger to his head.

23.     In February of 2017, Tarlentino falsely accused Ms. Kramer of "roaming the halls" and not working after she returned from an appointment with the EAP Counselor. Tarlentino made the comment loud enough for the entire NCAC section to hear. When Ms. Kramer produced evidence of emails she sent and stated that other coworkers saw her working, Tarlentino accused her of lying. He spoke in a loud intimidating tone, causing extreme emotional distress to Ms. Kramer.

24.     On the same day of the aforementioned incident, Ms. Kramer contacted the Site Coordinator's Office by phone to request that the Site Coordinator, Mr. Thomas Nicolazzi, obtain surveillance footage showing Ms. Kramer's coming and going into the area.

25.     In February of 2017, Ms. Kramer officially requested a meeting with Howell, Tarlentino, and Ms. Marylou Paccione, the Campus's EAP Counselor, to discuss the ongoing harassment she was experiencing. During this meeting, Howell defended Tarlentino and made derogatory

comments about Ms. Kramer's ex-husband's death. Howell also made comments questioning Ms. Kramer's ability to do her job due to her bipolar disorder and racing thoughts.

26.    At the same meeting in February 2017, Ms. Paccione stated that Ms. Kramer was able to perform her work duties despite her diagnosis of bipolar disorder. Ms. Paccione also reminded Howell and Tarlentino that Ms. Kramer has the right to walk from her office to her workstation. Howell stated that she did not want to view the surveillance tapes and requested that Tarlentino apologize to Ms. Kramer for accusing her of lying, which he did but in a sarcastic tone.

27.    After the February 2017 meeting, Howell and Tarlentino's behavior toward Ms. Kramer worsened. Tarlentino continued to make derogatory comments and gestures and Howell defended his actions by stating that he is "a responsible and respected manager." Tarlentino also stated that Ms. Kramer can't prove anything because no one else was present and nothing was recorded.

28.    Ms. Kramer interviewed for the Human Resource Specialist (HRS) position in March 2018. In 2018, prior to Ms. Kramer's non-selection for the Human Resource Specialist (HRS) position, Tarlentino made comments that Ms. Kramer would never be considered for a higher position until he decided she was "developed" enough. When Ms. Kramer disagreed with Tarlentino's comments that she was not "developed " enough, Tarlentino responded, "Is that a threat? Are you threatening me? Are you delusional again?" Ms. Kramer stated that she was not threatening him but rather disagreeing.

29.    From 2017 and continuing after Ms. Kramer filed her EEO charge, Tarlentino would refuse to speak directly to Ms. Kramer while she was present and instead talked about Ms. Kramer in the third person. Instead of giving Ms. Kramer instructions, he would tell others to "tell Liz", despite the fact that Ms. Kramer was right next to him.

30. In January 2018, Ms. Kramer requested a week of leave for grief in response to the death of her mother. Howell insisted that Ms. Kramer Skype her while Ms. Kramer was re-assigning her work for leave, despite knowing that Ms. Kramer's husband and son were present in the room.

31. During that conversation, Howell questioned Ms. Kramer's usage of Family Medical Leave Act (FMLA) and any future use of FMLA before Howell decided to accept Ms. Kramer's selection into the HCO's HREP (Human Resource Enrichment Program). Howell also questioned Ms. Kramer's ability to work and handle stress and accused her of using FMLA for her own health issues. Ms. Kramer feared retaliation in reporting the incident.

32. On or around April 25, 2018, Ms. Kramer was notified by Mr. Tarlentino that she was not selected for the HRS position because she was not "developed" enough.

33. Ms. Kramer had all of the qualifications for the HRS position: she was a seasoned HRA who had done details as an HRS (including one in the NCAC), she responded to thousands of complex customer service tickers without constant mentoring, many HRS's and HRA's reached out to Ms. Kramer to consult on complex cases, she had working knowledge of all personnel actions (pay and non-pay) that would normally only be known by HRS's, the usage of KISAM, knowledge of the usage of the HRConnect system, a bachelors in computer information systems, and she had taken courses that were HR related.

34. As an HRA, Ms. Kramer provided guidance to another HRA by providing her with prepared emails with specific references she could use and edit when responding to customers. There were multiple HRS who were not fully trained at the time of their selection and required guidance in completing their cases or tickets.

35. Ms. Kramer filed a charge of discrimination with the Equal Employment Oppurtunity Commission ("EEOC") on April 26, 2018.

36. During a Skype conversation following mediation in 2018, Tarlentino stated "you are stupid for filing a complaint about Ms. Howell and me." Tarlentino also reminded her that until he deemed Ms. Kramer "developed", she would not be promoted.

37. During a conversation following mediation in 2018, Howell told Ms. Kramer, "How dare you state that I did not select you because you are disabled and make false claims." Howell also stated, "I did not promote you because you lied on your resume and are not trustworthy."

38. Prior to a June 2018 evaluation meeting, Tarlentino stated that he could make Ms. Kramer's evaluation lower at any time. Additionally, Tarlentino stated that she would not be promoted to an HRS because she needs extensive mentoring and that she has too many issues that he sees are not normal. While making the comments, Tarlentino gestured a finger toward his head.

39. After an EEOC mediation meeting with Tarlentino, Howell and Ms. Kim Swabeck, the Area Director and Howell's supervisor, IRS management insisted that either Howell's assistant, Ms. Sandy Sorrenti, or that either Ms. Sue Tavano or Ms. Dawn Barbeau, managers for another group who report to Howell, be present in every meeting or discussion that Ms. Kramer was involved in.

40. No other employees supervised by Tarlentino were required to have another person present in the meeting. Tarlentino refused to answer when questioned why this was required. This practice continued until Tarlentino was promoted and moved to another area in March 2020.

41. In 2018, Tarlentino made other comments that Ms. Kramer "was not capable of listening to him; has issues; and does not know how to follow order." Tarlentino also made comments such as "that is your problem, you can't think," "you are the only one that thinks the way you do," "you don't make sense, you are rambling," and "as usual, it's all in your head.". On multiple occasions while making those comments Tarlentino would make a finger gesture toward his head.

42. In August 2018, Tarlentino was notified that Ms. Kramer had to complete the Career Learning Plan (CLP) by September. Terlentino had to sign the CLP by the deadline in order for Ms. Kramer to graduate from the HREP; Tarlentino told Ms. Kramer that if she did not agree to his suggestions, he would not sign any documents.

43. In September 2018, while Ms. Kramer was completing the CLP, her computer crashed and she was placed at another computer two buildings away. During this time, Ms. Kramer was suffering from a knee and back flare up, causing chronic pain. Ms. Kramer was also walking with a cane. Tarlentino knew of the pain but instructed Ms. Kramer to walk to his office two buildings over to discuss the CLP document in person. Ms. Kramer requested to speak via phone or Skype instead of walking, but Tarlentino denied this request. He made Ms. Kramer walk to and from her temporary desk two buildings away three times to fix issues with the CLP. Tarlentino signed the document, and it was submitted to the HREP POC.

44. In September 2018, Ms. Kramer was informed by a coworker who was also submitting her CLP that day that she did not have to meet in person with Tarlentino and she did not have to have a manager sign the document.

45. From 2018 until March 2020, Tarlentino continued to criticize Ms. Kramer's work and would specifically pick out customer service tickets to elevate to Howell, claiming that Ms.

Kramer was not developed enough. These comments were made while other HRA's and HRS's were reaching out to Ms. Kramer to help with complex issues. Ms. Kramer was producing an average of 90 tickets, while the average coworker was producing 25 tickets.

46. From October 31 to November 6, 2018, Ms. Howell would scrutinize Ms. Kramer's emails despite customers replying with satisfied responses.

47. On November 6, 2018, Ms. Howell criticized Ms. Kramer's writing skills and referred her to Theresa Abril, a Senior HRS consultant, for instructions on how to write emails. The training was cancelled when Ms. Kramer advised she viewed the referral as retaliation.

## COUNT I

**Disparate Treatment in Violation of Section 501 of the Rehabilitation Act of 1973
(Denial of Promotion, Unequal Terms & Conditions of Employment, and Harassment)**

48. Ms. Kramer repeats and realleges the allegations contained in paragraphs "1" through "47" of the Complaint as if more fully set forth herein.

49. Ms. Kramer suffers from several mental and physical impairments that affect multiple body systems, and her disabilities substantially limit one or more major life activities, including, caring for oneself, performing manual tasks, eating, sleeping, walking, standing, sitting, reaching, lifting, bending, speaking, learning, concentrating, thinking, communicating, sleeping, interacting with others, and working.

50. In the alternative, if Ms. Kramer is not found to have a physical impairment that substantially limits one or more major life activities, she was regarded as having such impairment because Defendant was advised of her bipolar disorder and her physical disabilities and referenced her disabilities on multiple occasions.

51. Ms. Kramer was qualified for the position to which she applied for a promotion, in that she had the requisite education, experience, and training and could perform all of the essential functions of the job, and was denied the promotion because of her disability.

52. Ms. Kramer was also subjected to unequal terms and conditions of her employment, as well as severe and pervasive harassment, by her supervisors and others because of her disability.

53. Alternatively, Defendant subjected Ms. Kramer to this disparate treatment because she was regarded as an individual with disabilities by failing to promote her and subjecting her to unequal terms and conditions of her employment and harassment by her supervisor and others.

54. As a result of Defendant's discriminatory treatment, Ms. Kramer suffered significant financial and emotional harm in the sum of ONE HUNDRED AND FIFTY THOUSAND ($150,000) DOLLARS.

## COUNT II

**Retaliation in Violation of Section 501 of the Rehabilitation Act**

55. Ms. Kramer repeats and realleges the allegations contained in paragraphs "1" through "54" of the Complaint as if more fully set forth herein.

56. Defendant retaliated against Ms. Kramer after she complained to her managers about the discriminatory treatment she was subjected to and later after she filed a charge with the EEOC.

57. Specifically, Defendant denied her a promotion in April 2018, despite her being qualified for the position.

58. Defendant also repeatedly made comments on her work quality being poor due to her disabilities. He stated that she is "stupid", "not trustworthy", "incapable of listening", "does not know how to follow orders", "can't think", "always rambling" and that "as usual, it's all in your head".

59. Additionally, Defendant made Ms. Kramer walk back and forth from his office three times. Defendant's office was two buildings away from Ms. Kramer's desk. And Defendant was aware that Ms. Kramer was in pain and using a cane to walk.

60. As a result of the retaliation, Ms. Kramer suffered significant financial and emotional damages in the sum of ONE HUNDRED AND FIFTY THOUSAND ($150,000) DOLLARS.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment as follows:

a) Declaring that the actions, patterns and practices of the defendant, its agents, servants and all those acting in concert with them, constituted, and does constitute, a violation of Section 501 of the Rehabilitation Act of 1973;

b) Awarding damages for economic and emotion injuries, in the amounts stated above, as well as interests and costs;

c) Injunctive relief to prevent Defendant from engaging in discriminatory treatment; and

d) Such other and further relief as this Court deems just and proper.

Dated: Moriches, New York
June 11, 2021

Respectfully submitted,

Elizabeth P. Kramer
72 Sunrise Court Apartment 12
Moriches, NY 11955
Tel. (631)772-8786
kramerfamily@optonline.net



**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
Office of Federal Operations
P.O. Box 77960
Washington, DC 20013

Elizabeth P. Kramer, a/k/a
Kathlyn K.,[1]
Complainant,

v.

Janet L. Yellen,
Secretary,
Department of the Treasury
(Internal Revenue Service),
Agency.

Appeal No. 2020003030

Hearing No. 520-2019-00264X

Agency No. IRS-18-0594-F

DECISION

Complainant appeals to the Equal Employment Opportunity Commission (EEOC or Commission), pursuant to 29 C.F.R. § 1614.403(a), from the Agency's March 3, 2020, final order concerning her equal employment opportunity (EEO) complaint alleging employment discrimination in violation of Section 501 of the Rehabilitation Act of 1973 (Rehabilitation Act), as amended, 29 U.S.C. § 791 et seq. For the following reasons, the Commission AFFIRMS the Agency's final order.

BACKGROUND

At the time of events giving rise to this complaint, Complainant worked as a Human Resources Assistant, GS-07, at the Agency's Brookhaven Service Center facility in Holtsville, New York.

On August 1, 2018, Complainant filed an EEO complaint alleging that the Agency discriminated against her on the bases of disability (mental and physical) and reprisal (filing the instant complaint) when:

---

[1] This case has been randomly assigned a pseudonym which will replace Complainant's name when the decision is published to non-parties and the Commission's website.

2                                          2020003030

1. On or about April 25, 2018, Complainant was not selected for Human Resource Specialist positions, GS-0201-05/07, under Vacancy Announcement number 18CE1-HCN0310-0201-5T11-V020107;
2. On June 13, 2018, Complainant received her 2018 annual appraisal with a lower rating than she believes she deserved; and
3. On or about October 2, 2018, management scrutinized and criticized Complainant's Career Learning Plan (CLP).[2]

At the conclusion of the investigation, the Agency provided Complainant with a copy of the report of investigation and notice of her right to request a hearing before an Equal Employment Opportunity Commission Administrative Judge (AJ). Complainant requested a hearing. Over Complainant's objections, the AJ assigned to the case granted the Agency's December 6, 2019, motion for a decision without a hearing and issued a decision without a hearing on February 10, 2020, finding no discrimination. With regard to claim 1, the AJ found Complainant scored lower than other applicants in the interview, her resume was not as strong as other applicants, and Complainant failed to show how she was "demonstrably superior" to other selectees. With regard to claim 2, the AJ noted Complainant was rated higher than her previous two annual evaluations and failed to produce any evidence which would give rise to a reasonable inference of discrimination. With regard to claim 3, Complainant admitted that her feedback, which included being more specific and setting reasonable goals, contained some great suggestions.

The Agency subsequently issued a final order adopting the AJ's finding that Complainant failed to prove that the Agency subjected her to discrimination as alleged. The instant appeal followed.

## ANALYSIS AND FINDINGS

The Commission's regulations allow an AJ to grant summary judgment when he or she finds that there is no genuine issue of material fact. 29 C.F.R. § 1614.109(g). An issue of fact is "genuine" if the evidence is such that a reasonable fact finder could find in favor of the non-moving party. Celotex v. Catrett, 477 U.S. 317, 322-23 (1986); Oliver v. Digital Equip. Corp., 846 F.2d 103, 105 (1st Cir. 1988). A fact is "material" if it has the potential to affect the outcome of the case. In rendering this appellate decision, we must scrutinize the AJ's legal and factual conclusions, and the Agency's final order adopting them, de novo. See 29 C.F.R. § 1614.405(a)(stating that a "decision on an appeal from an Agency's final action shall be based on a de novo review..."); see also Equal Employment Opportunity Management Directive for 29 C.F.R. Part 1614 (EEO-MD-110), at Chap. 9, § VI.B. (as revised, August 5, 2015)(providing that an administrative judge's determination to issue a decision without a hearing, and the decision itself, will both be reviewed de novo).

---

[2] Complainant alleges both disability and reprisal for claim 3 only. Claim 1 and 2 allege only disability discrimination.

In order to successfully oppose a decision by summary judgment, a complainant must identify, with specificity, facts in dispute either within the record or by producing further supporting evidence and must further establish that such facts are material under applicable law. Such a dispute would indicate that a hearing is necessary to produce evidence to support a finding that the agency was motivated by discriminatory animus. Here, however, Complainant has failed to establish such a dispute. Even construing any inferences raised by the undisputed facts in favor of Complainant, a reasonable fact-finder could not find in Complainant's favor.

Upon careful review of the AJ's decision and the evidence of record, as well as the parties' arguments on appeal, we conclude that the AJ correctly determined that the preponderance of the evidence did not establish that Complainant was discriminated against by the Agency as alleged.

## CONCLUSION

Accordingly, we AFFIRM the Agency's final order fully implementing the AJ's decision finding no discrimination.

## STATEMENT OF RIGHTS - ON APPEAL
## RECONSIDERATION (M0920)

The Commission may, in its discretion, reconsider this appellate decision if Complainant or the Agency submits a written request that contains arguments or evidence that tend to establish that:

1. The appellate decision involved a clearly erroneous interpretation of material fact or law; or
2. The appellate decision will have a substantial impact on the policies, practices, or operations of the agency.

Requests for reconsideration must be filed with EEOC's Office of Federal Operations (OFO) **within thirty (30) calendar days** of receipt of this decision. If the party requesting reconsideration elects to file a statement or brief in support of the request, **that statement or brief must be filed together with the request for reconsideration**. A party shall have **twenty (20) calendar days** from receipt of another party's request for reconsideration within which to submit a brief or statement in opposition. See 29 C.F.R. § 1614.405; Equal Employment Opportunity Management Directive for 29 C.F.R. Part 1614 (EEO MD-110), at Chap. 9 § VII.B (Aug. 5, 2015).

Complainant should submit his or her request for reconsideration, and any statement or brief in support of his or her request, via the EEOC Public Portal, which can be found at https://publicportal.eeoc.gov/Portal/Login.aspx. Alternatively, Complainant can submit his or her request and arguments to the Director, Office of Federal Operations, Equal Employment Opportunity Commission, via regular mail addressed to P.O. Box 77960, Washington, DC 20013, or by certified mail addressed to 131 M Street, NE, Washington, DC 20507.

4                                                                                   2020003030

In the absence of a legible postmark, a complainant's request to reconsider shall be deemed timely filed if OFO receives it by mail within five days of the expiration of the applicable filing period. See 29 C.F.R. § 1614.604.

An agency's request for reconsideration must be submitted in digital format via the EEOC's Federal Sector EEO Portal (FedSEP). See 29 C.F.R. § 1614.403(g). Either party's request and/or statement or brief in opposition must also include proof of service on the other party, unless Complainant files his or her request via the EEOC Public Portal, in which case no proof of service is required.

Failure to file within the 30-day time period will result in dismissal of the party's request for reconsideration as untimely, unless extenuating circumstances prevented the timely filing of the request. **Any supporting documentation must be submitted together with the request for reconsideration.** The Commission will consider requests for reconsideration filed after the deadline only in very limited circumstances. See 29 C.F.R. § 1614.604(c).

### COMPLAINANT'S RIGHT TO FILE A CIVIL ACTION (S0610)

You have the right to file a civil action in an appropriate United States District Court **within ninety (90) calendar days** from the date that you receive this decision. If you file a civil action, you must name as the defendant in the complaint the person who is the official Agency head or department head, identifying that person by his or her full name and official title. Failure to do so may result in the dismissal of your case in court. "Agency" or "department" means the national organization, and not the local office, facility or department in which you work. If you file a request to reconsider and also file a civil action, **filing a civil action will terminate the administrative processing of your complaint.**

### RIGHT TO REQUEST COUNSEL (Z0815)

If you want to file a civil action but cannot pay the fees, costs, or security to do so, you may request permission from the court to proceed with the civil action without paying these fees or costs. Similarly, if you cannot afford an attorney to represent you in the civil action, you may request the court to appoint an attorney for you. **You must submit the requests for waiver of court costs or appointment of an attorney directly to the court, not the Commission.** The court has the sole discretion to grant or deny these types of requests.

5                                              2020003030

Such requests do not alter the time limits for filing a civil action (please read the paragraph titled Complainant's Right to File a Civil Action for the specific time limits).

FOR THE COMMISSION:

*[signature]*
Carlton M. Hadden, Director
Office of Federal Operations

March 18, 2021
Date

6                                                                                           2020003030

## CERTIFICATE OF MAILING

**For timeliness purposes, the Commission will presume that this decision was received within five (5) calendar days after it was provided to the parties.** I certify that on the date below this decision was provided to the following recipients via the means identified for each recipient:

Elizabeth P. Kramer
72 Sunrise Court Apt 12
Moriches, NY  11955
Via U.S. Mail

Mariam G. Harvey, Director, EO Programs
Department of the Treasury
Office of Civil Rights and Diversity
Via FedSEP

<u>March 18, 2021</u>
Date

_____
Compliance and Control Division