UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------X
ELIZABETH KRAMER, *Pro Se*

                                Plaintiff,                    Case No: 21-cv-03295
      -against-                                     (JMA) (ST)

JANET L. YELLEN as Secretary of the
US Department of Treasury,
(Internal Revenue Service Agency),
                                Defendant.


--------------------------------------------------------X


## PLAINTIFF'S MEMORANDUM OF LAW IN
## OPPOSITION TO DEFENDANT'S MOTION TO DISMISS[1]

---

[1] The Hofstra Law Pro Se Legal Assistance Program assisted the litigant in the preparation of this memorandum but does not appear on her behalf.

## TABLE OF CONTENTS

**TABLE OF AUTHORITIES** ......................................................................................... 2

**STATEMENT OF FACTS** ......................................................................................... 5

**ARGUMENT** ....................................................................................................... 6

    **I.**    **Standard Governing Dismissal Under Federal Rule of Civil Procedure 12(b)(6)** ....................................................................................... 6

    **II.**    **Plaintiff's Claims for Unequal Terms and Conditions of Employment, Harassment and Retaliation are Not Time Barred and Sufficiently Allege Claims Under Section 501 of the Rehabilitation Act** ............................... 7

        **A.**    **Plaintiff Sufficiently Exhausted Her Administrative Remedies and the Allegations in Her Complaint are Reasonably Related to the Original Claims Raised Before the EEOC** ............................................... 8

        **B.**    **Plaintiff Has Sufficiently Stated a Claim for Disparate Treatment Under Section 501 of the Rehabilitation Act** ............................... 10

        **C.**    **Plaintiff Has Sufficiently Alleged Disability Harassment to Survive a Motion to Dismiss for Failure to State a Claim** ........................... 12

        **D.**    **Plaintiff Has Sufficiently Stated a Claim for Retaliation Under Section 501 of the Rehabilitation Act** .............................................. 14

**CONCLUSION** ................................................................................................ 23

## TABLE OF AUTHORITIES

**Cases**

*Abdu–Brisson v. Delta Airlines Inc.*, 239 F.3d 456 (2d. Cir 2001) ..................................................11

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ................................................................. 6

*Briones v. Runyon*, 101 F.3d 287 (2d Cir. 1996) ............................................................. 8

*Brown v. Coach Stores Inc.*,163 F.3d 706 (2d Cir. 1998) .............................................. 8

*Castro v. City of N.Y.*, 24 F. Supp. 3d 250 (E.D.N.Y. 2014) ......................................11

*Chambers v. TRM Copy Centers Corp.*, 43 F.3d 29 (2d Cir. 1994) ............................. 14

*Cherry v. NY City Hous. Auth.,* 2021 U.S. Dist. LEXIS 191353, (E.D.N.Y. Sep. 30, 2021) ..........12

*Cifra v. GE*, 252 F.3d 205 (2d Cir. 2001) ..................................................... 17

*Demoret v. Zegarelli*, 451 F.3d 140 (2d Cir. 2006) ................................................ 10, 16

*Dimitracopoulos v. City of New York*, 26 F. Supp. 3d 200 (E.D.N.Y. June 4, 2014) .................. 12

*Dister v. Continental Group, Inc.*, 859 F.2d 1108 (2d Cir. 1988) .......................................... 14, 16

*Feingold v. New York*, 366 F.3d 138 (2d Cir. 2004) .................................................... 12

*Fincher v. Depository Trust & Clearing Corp.*, 604 F.3d 712 (2d Cir. 2010) ...................... 15, 16

*Global Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150 (2d Cir. 2006) ..................... 6

*Harris v. Forklift Systems, Inc.*, 510 U.S. 17 (1993) ……..................................................... 12

*Harris v. Mills*, 572 F.3d 66 (2d Cir. 2009) ……………................................................ 7

*Hicks v. Baines*, 593 F.3d 159 (2d Cir. 2010) .................................................. 14

*Hollander v. American Cyanamid Co.*, 895 F.2d 80 (2d Cir. 1990) ............................................ 16

*Holtz v. Rockefeller & Co.*, 258 F.3d 62 (2d Cir. 2001) ................................................ 9

*Hoyt v. Andreucci*, 433 F.3d 320 (2d Cir. 2006) ……………........................................... 16

*Hughes v. Rowe*, 449 U.S. 5 (1980) ...................................................... 7

*Kaganovich v. McDonough*, 547 F. Supp. 3d 248 (E.D.N.Y. July 2, 2021) .................................... 8

*Kelly v. New York State Office of Mental Health*, 200 F. Supp. 378 (E.D.N.Y. Aug. 9, 2016) .... 7

*Kirkland v. Buffalo Board of Educ.*, 622 F.2d 1066 (2d Cir. 1980) ......................................... 9, 10

*Kramer v. Time Warner, Inc.*, 937 F.2d 767 (2d Cir. 1991) .......................................................... 6

*Loeffler v. Staten Island Univ. Hosp.*, 582 F.3d 268 (2d Cir. 2009) ............................................ 7

*Malachi v. Postgraduate Ctr. for Mental Health,* 2013 WL 782614 (E.D.N.Y. Mar. 1, 2013) .... 9

*Malarkey v. Texaco, Inc.*, 983 F.2d 1204 (2d Cir. 1993) ............................................................. 10

*McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) ...................................................... 7, 11

*Miller v. Kempthorne*, 357 Fed. Appx. 384 (2d Cir. 2009) ......................................................... 8

*Myers v. New York*, 2013 U.S. Dist. LEXIS 109705 (E.D.N.Y. Aug. 2, 2013) ........................... 12

*Owens v. New York City Housing Auth.*, 934 F.2d 405 (2d Cir. 1991) ........................................ 10

*Patane v. Clark*, 508 F.3d 106 (2d Cir. 2007) ............................................................................. 6

*Phillips v. Bowen*, 278 F.3d 103 (2d Cir. 2002) .......................................................................... 16

*Quinn v. Green Tree Credit Corp.*, 159 F.3d 759 (2d Cir. 1998) ..................................... 14, 15, 18

*Rivera v. Heyman*, 157 F.3d 101 (2d. Cir. 1998) ......................................................................... 6

*Rivers v. NY City Hous. Auth.,* 176 F. Supp 3d 229 (E.D.N.Y. 2016) .................................... 15, 16

*Robinson v. 12 Lofts Realty, Inc*., 610 F.2d 1032 (2d Cir. 1979) ................................................ 18

*Rosen v. Thornburgh*, 928 F.2d 528 (2d Cir. 1991) .................................................................... 15

*Ruiz v. City of Rockland*, 609 F.3d 486 (2d Cir. 2010) ................................................................ 8

*Schmitt v. City of NY*, 2018 U.S. Dist. LEXIS 187382 (E.D.N.Y. Nov. 1, 2018) ................... 11, 14

*St. Mary's Honor Ctr. v. Hicks*, 113 S. Ct. 2742 (1993) .............................................................. 11

*Treglia v. Town of Manlius*, 313 F.3d 713 (2d Cir. 2002) ...................................................... 15, 16

*Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471 (2d. Cir. 2006) ............................................. 7

*Weeks v. New York State (Div. of Parole)*, 273 F.3d 76 (2d Cir. 2001) ..................................... 9, 11

*Ximines v. George Wingate High Sch.*, 516 F.3d 156 (2d Cir. 2008) ............................................. 9

*Zelnik v. Fashion Inst. of Tech.*, 464 F.3d 217 (2d Cir. 2006) ...................................................... 16

*Zimmermann v. Assoc. First Capital Corp.*, 251 F.3d 376 (2d Cir. 2001) ................................... 14

**Statutes**

29 U.S.C. § 794(a) ......................................................................................................................... 7

29 U.S.C.S § 701(b) (2022) ........................................................................................................... 7

**Rules**

Federal Rule of Civil Procedure 12(b)(6) ...................................................................................... 6

**Regulations**

29 CFR § 1614.105 (2022) ............................................................................................................. 8

I, Elizabeth Kramer, Plaintiff in the above-referenced action, acting *pro se*, hereby submit the following Memorandum of Law in support of my Opposition to Defendant's Motion to Dismiss the Complaint.

## STATEMENT OF FACTS

I have worked for the Internal Revenue Service ("IRS") since July 10, 2010, when I was hired as a clerk for Accounts Management through the Abilities Program within the New York State Vocational Education Services for Individuals with Disabilities ("VESID") organization. *See* Complaint, Dkt. #1 ("Compl.")  ¶ 12. I have held several different positions, including serving as a Management Assistant, an Operational Management Assistant, and as a Human Resources Assistant, my title at the time of the events discussed in this case. *Id.* at ¶14. I suffer from mental and physical disabilities, including bipolar disorder, vaso-vagal disorder, chronic migraines and chronic pain disorder, pinched nerves, osteoarthritis, mitral valve prolapse, high blood pressure, obesity and vertigo. *Id.* at ¶¶ 9-10. While these disabilities limit my ability to engage in major life activities, with reasonable accommodations I have always been able to perform well in all of my positions during my employment at the IRS. *Id.* at ¶¶ 8, 10-11. To the best of my knowledge, all of my supervisors at the IRS were aware of my disabilities. *Id.* at ¶¶ 13, 16-17.

As noted in my Complaint, I have been subjected to offensive and derogatory comments about my disabilities, as well as other verbal and non-verbal gestures, by my manager Mr. Joseph Tarlentino ("Tarlentino"), and by Ms. Nadine Howell ("Howell"), Non-Competitive Action Center (NCAC) Operation Chief, for many years. *Id.* at ¶¶ 18, 20-27. I did not initially complain about my discriminatory treatment out of fear of retaliation for filing grievances or complaints

due to witnessing how other employees were harassed, discriminated, or retaliated against. *Id.* at ¶ 19.

In February of 2017, after Tarlentino falsely accused me of "roaming the halls" and not working and then accused me of lying, I officially requested a meeting with Howell, Tarlentino and Ms. Marylou Paccione, the Campus's EAP Counselor, to discuss the ongoing harassment I had been experiencing. *Id.* at ¶¶ 23, 25. During the meeting, Howell made derogatory comments about my ex-husband's death and questioned my ability to do my job due to my bipolar disorder and racing thoughts. *Id.* Ms. Paccione explained that I was able to perform my work duties despite my disabilities, and then Howell told Tarlentino to apologize to me. *Id.*at ¶ 26. After the meeting, Howell and Tarlentino's behavior towards me worsened by them continuing to make derogatory remarks and gestures. *Id.* at ¶ 27. Tarlentino refused to speak to me directly and instead talked about me in the third person. *Id.* at¶ 29. Instead of giving me instructions, he would tell others to "tell Liz", despite the fact that I would be right next to him. *Id.* Howell questioned my use of Family and Medical Leave Act ("FMLA") leave when my mother died, and also questioned my ability to work and handle stress, accusing me of using the FMLA leave for my own health issues. *Id.* at ¶¶ 30-31.

In March 2018, I interviewed for the Human Resource Specialist (HRS) position but was subsequently rejected in April because Tarlentino felt that I was not "developed enough" and that I was "delusional." *Id.* at ¶ 28, 32. This is despite my being ranked as the "Best Qualified" candidate. *See* Dec. of Megan J. Freismuth dated March 21, 2022, Ex. A to Def. Mot. to Dismiss. I had all the qualifications for the position: I am a seasoned Human Resources Assistant, I had responded independently to thousands of complex customer service tickets without constant mentoring, I had working knowledge of all personnel actions that would normally be known by

Human Resource Specialists, a bachelor's in computer information systems, and I have taken courses that were HR related. *Id.* at ¶ 33. In addition, I was more qualified than other Human Resource Specialists who were not fully trained and required guidance. *Id.* at ¶ 34.

On April 26, 2018, I contacted the Equal Employment Opportunity Commission ("EEOC"). *Id.* at ¶ 35. Following mediation in 2018, Tarlentino told me "you are stupid for filing a complaint about Ms. Howell and me" and reminded me that until he deemed me "developed", I would not be promoted. *Id.* at ¶ 36. Further, Howell falsely told me "I did not promote you because you lied on your resume and are not trustworthy." *Id.* at ¶ 37.  The area director, Howell's supervisor and IRS management, later insisted that associates who report to Howell would be present in every meeting or discussion that I was involved in. *Id.* at ¶ 39. No other employees supervised by Tarlentino were required to have another person present in the meeting. *Id.* at. ¶ 40.

Prior to a June 2018 evaluation meeting, Tarlentino stated that he could make my evaluation lower at any time and I would not be promoted because I had too many issues that he saw as not normal, gesturing to his head. *Id.* at ¶ 38. He ultimately gave me a lower rating than I deserved on my annual review that year. *See* EEO Decision, dated March 18, 2021, attached to Compl. ("EEO Decision"). Tarlentino made additional comments to me in 2018, including "that is your problem, you can't think," "you are the only one that thinks the way you do," "you don't make sense, you are rambling," and "as usual, it's all in your head." *Id.* at ¶ 41.

I filed a formal complaint with the EEOC on August 1, 2018, alleging disability discrimination and reprisal based on the failure to promote me, the retaliatory lower rating on my review that year, and management's scrutiny and criticism of my CLP. *See* EEO Decision. After an investigation and a hearing, the EEOC ultimately issued a decision against me, and notified

me of my right to bring an action against Defendant in federal court, which I did within 90 days. *Id.*

In August 2018, I was required to complete a Career Learning Plan (CLP) by September. *Id.* at ¶ 42. Tarlentino told me that if I did not agree with his suggestions, he would not sign any documents related to the CLP. *Id.* During this time, I was suffering from a knee and back flare up, causing chronic pain. *Id.* at ¶ 43. Tarlentino knew of my pain but instructed me to walk two buildings over three times to discuss CLP documents. *Id.* I was informed by a co-worker who was also submitting her CLP that she did not have to meet in person with Tarlentino and she did not have to have a manager sign the document. *Id.* at ¶ 44. I amended my EEOC charge to include these allegations in October 2018.

From 2018 until March 2020, Tarlentino continued to criticize my work despite customers replying with satisfied responses. *Id.* at ¶¶ 44-46. Howell scrutinized my emails and criticized my writing skills, referring me initially to a Senior Human Resources Specialist Consultant for guidance on how to write emails, but this training was later canceled after I told her I thought it was retaliatory. *Id.* at ¶ 47. I was producing an average of 90 tickets, while the average coworker was producing 25 tickets. *Id.* at ¶ 45.

## ARGUMENT

I have brought two counts against Defendant under Section 501 of the Rehabilitation Act of 1973: (1) disparate treatment, including denial of promotion, unequal terms and conditions of employment, and harassment, and (2) retaliation. *See Rivera v. Heyman*, 157 F.3d 101, 102 (2d. Cir. 1998) ("Section 501 of the Rehabilitation Act provides the sole remedy for federal employees alleging employment discrimination based on a disability"). Defendant is only seeking a partial dismissal of my claims but has expressly stated that no such dismissal is sought for my claims regarding denial of promotion. Def. Mem. of Law. at 1 n.1. For the reasons set forth below, the remaining claims should not be dismissed.

## I.      Standard Governing Dismissal Under Federal Rule of Civil Procedure 12(b)(6)

A defendant may move to dismiss if the plaintiff fails "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). When deciding a motion to dismiss under Rule 12(b)(6), "a district court must limit itself to facts stated in the complaint or in documents attached to the complaint as exhibits or incorporated in the complaint by reference." *Kramer v. Time Warner, Inc.*, 937 F.2d 767, 773 (2d Cir. 1991). The Court must accept the allegations contained in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *Patane v. Clark*, 508 F.3d 106, 111 (2d Cir. 2007) (citing *Global Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 154 (2d Cir. 2006)). To withstand a motion to dismiss, the "complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations omitted). The plausibility standard requires "more than a sheer possibility that the defendant acted unlawfully". *Id.*

A *pro se* plaintiff's complaint is held "to less stringent standards than formal pleadings drafted by lawyers." *Hughes v. Rowe*, 449 U.S. 5, 9 (1980) (internal citations omitted). The Court should construe *pro se* pleadings liberally and interpret them to raise the strongest claims that they suggest. *See Harris v. Mills,* 572 F.3d 66, 72 (2d Cir. 2009); *see also Triestman v. Fed. Bureau of Prisons,* 470 F.3d 471, 474 (2d. Cir. 2006).

## II.     Plaintiff's Claims for Unequal Terms and Conditions of Employment, Harassment, and Retaliation Are Not Time Barred and Sufficiently Allege Claims under Section 501 of the Rehabilitation Act

The Rehabilitation Act of 1973 "empowers individuals with disabilities to maximize employment, economic self-sufficiency, independence, and inclusion and integration into society." 29 U.S.C.S § 701(b) (2022). All programs, projects and activities receiving assistance under the Rehabilitation Act must uphold principles of respect for individual dignity, privacy, rights and equal access to individuals who are disabled. *Id.* Specifically, the Act provides that "[n]o otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination . . . under any program or activity conducted by any Executive agency . . . ." 29 U.S.C.  § 794(a). Any person aggrieved by any act or failure to act by any recipient of Federal assistance under the Rehabilitation Act may bring suit pursuant to U.S.C. § 794(a).  *Loeffler v. Staten Island Univ. Hosp.*, 582 F.3d 268, 280 (2d Cir. 2009). The Rehabilitation Act, like the Americans with Disabilities Act and Title VII, contemplates claims for disparate treatment, harassment, and retaliation. *See Kelly v. New York State Office of Mental Health,* 200 F. Supp. 3d 378, 399-408 (E.D.N.Y. 2016) (citations omitted).

Claims of disability discrimination brought under the Rehabilitation Act proceed under the burden-shifting analysis set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792

(1973). *Kaganovich v. McDonough*, No. 18-cv-2517, 547 F. Supp. 3d 248, 262-63 (E.D.N.Y.

July 2, 2021). This standard requires that a plaintiff first establish a prima facie case of

discrimination. *Id.* at 263; *Ruiz v. City of Rockland*, 609 F.3d 486, 491 (2d Cir. 2010).

> ### A.   Plaintiff Sufficiently Exhausted Her Administrative Remedies and the Allegations in Her Complaint are Reasonably Related to the Original Claims Raised Before the EEOC

As a prerequisite to bringing an action in federal court under the Rehabilitation Act, a

federal employee must exhaust her administrative remedies by presenting her claims to the

EEOC. *See Miller v. Kempthorne*, 357 Fed. Appx. 384, 385 (2d Cir. 2009); *Briones v. Runyon*,

101 F.3d 287, 289-90 (2d Cir. 1996). "The purpose of this exhaustion requirement is to give the

administrative agency the opportunity to investigate, mediate and take remedial action." *Brown*

*v. Coach Stores Inc.*, 163 F.3d 706, 712 (2d Cir. 1998). Additionally, an aggrieved person who

believes they have been discriminated against on the basis of disability must consult an EEO

counselor prior to filing a complaint in order to try to informally resolve the matter. 29 CFR §

1614.105(a) (2022). The person must initiate contact with a counselor within 45 days of the date

of the matter alleged to be discriminatory or in the case of personnel action, within 45 days of the

effective date of action. 29 CFR § 1614.105 (a)(1) (2022).

I am not time-barred by 29 CFR § 1614.105 because I did make contact with an EEO

Counselor within 45 days of the discriminatory treatment against me: namely the denial of

promotion and retaliatory treatment in the subsequent several months in 2018. I was informed of

the fact that I was denied the promotion on or about April 25, 2018. *See* Compl. ¶ 32. The next

day, I contacted the Equal Employment Opportunity Commission ("EEOC"). *Id.* at ¶ 35. As

acknowledged by Defendant, I was in contact with the EEOC well within the 45-day limit

afforded. *See* Def. Motion to Dismiss at 2, n. 2. That summer, I underwent EEO mediation and I

later filed a formal EEOC Complaint on August 1, 2018. I later amended it on October 8, 2018,
to include the denial of promotion, as well as additional claims of a lower annual appraisal and
retaliation for filing my EEO complaint. *See* EEOC Decision.

Claims not raised in an administrative charge may still be brought if "reasonably related"
to the claim filed with the EEOC. *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 83 (2d Cir. 2001). A
claim is "reasonably related" to a filed claim if the claim "would fall within the scope of the
EEOC investigation which can reasonably be expected to grow out of the charge that was made,"
or if it "chronicles additional instances of discrimination carried out in essentially the same
manner." *See Malachi v. Postgraduate Ctr. for Mental Health*, 10-cv-3527, 2013 WL 782614, at
*2 (E.D.N.Y. Mar. 1, 2013) (ADA and ADEA claims); *Ximines v. George Wingate High Sch.*,
516 F.3d 156, 158 (2d Cir. 2008). Such exception may be made where the EEOC complaint gave
"adequate notice" to the agency to investigate such discrimination. *Ximines*, 516 F.3d at 158.

I alleged in my original EEOC complaint that Defendant discriminated against me on the
basis of my mental and physical disabilities. *See* Compl. ¶¶ 13-14; EEO Decision. I alleged
disparate treatment and reprisal, specifically that I was denied a promotion to the HRS position,
and that following my complaint I received a more negative performance review in my annual
appraisal and received heightened scrutiny on my CLP. Compl. at ¶ 14; EEO Decision. My
Complaint details the discriminatory conduct, beginning in 2015 and continuing through 2018,
which I was subjected to while working for the IRS and at the hands of my superiors, including
denial of promotion, unequal treatment, harassment, and retaliatory acts by Tarlentino and
Howell. *Id.* at ¶¶ 18-60.

Furthermore, and with respect to claims of retaliation, in *Kirkland v. Buffalo Board of
Educ.*, the Second Circuit has found that a "'right to sue' letter, although not constituting an open

license to litigate any claim of discrimination … does permit a court to consider … new acts occurring during the pendency of the charge before the EEOC." *Kirkland v. Buffalo Board of Educ.*, 622 F.2d 1066, 1068 (2d Cir. 1980). Since the decision in *Kirkland*, "the reasonably related rule has been broadly construed to allow judicial redress for most retaliatory acts arising subsequently to an EEOC filing." *See Malarkey v. Texaco, Inc.*, 983 F.2d 1204, 1209 (2d Cir. 1993); *see also Owens v. New York City Housing Auth.*, 934 F.2d 405, 410-11 (2d Cir. 1991).

Under separate cover, I am filing a Motion to Amend my Complaint to include additional claims. I filed a subsequent EEOC charge on July 30, 2019, based on Defendant's discrimination, hostile work environment, and reprisal acts that took place during 2019. I filed an appeal, pursuant to 29 CFR § 1614.105 (a), from the EEOC's August 16, 2021 final order concerning my second EEO complaint, wherein the EEOC made specific determinations about my claims of discrimination, reprisal, and harassment, finding that I failed to establish evidence sufficient to raise a genuine issue of material fact with respect to these claims. I received a Notice of Right to Sue, dated April 4, 2022, and will now file a new action involving those claims.

### B.    Plaintiff Has Sufficiently Stated a Claim for Disparate Treatment Under Section 501 of the Rehabilitation Act

To establish a claim of disparate treatment based on a disability under the Rehabilitation Act, a plaintiff must allege that: "(1) she is a member of a protected class; (2) her job performance was satisfactory; (3) she suffered adverse employment action; and (4) the action occurred under conditions giving rise to an inference of discrimination." *Demoret v. Zegarelli*, 451 F.3d 140, 151 (2d Cir. 2006). The burden will then shift to the defendant to articulate a legitimate, nondiscriminatory reason for their actions. *Id.* at 151. Finally, the plaintiff "must show that the defendant's articulated reason for its decision is in fact a pretext for

discrimination." *Id.* (citing *McDonnell Douglas*, 411 U.S. at 804; *St. Mary's Honor Ctr. v. Hicks*, 125 L. Ed. 2d 407, 113 S. Ct. 2742, 2752 (1993)).

Adverse employment actions are those acts that materially alter the terms and conditions of plaintiff's employment. *Weeks v. New York State (Div. of Parole)*, 273 F.3d 76, 85 (2d Cir. 2001). As such, adverse actions typically relate to personnel decisions that implicate demotions, denial of promotions, compensation decisions, disciplinary action, suspension, and termination. *Id.* at 85. However, a plaintiff must also offer evidence showing that the adverse action occurred giving rise to an inference of discrimination. *Castro v. City of N.Y.*, 24 F.Supp. 3d 250, 261 (E.D.N.Y. 2014) (citing *Abdu–Brisson v. Delta Airlines Inc.*, 239 F.3d 456, 468 (2d Cir. 2001)). An inference may be drawn "where an employer has made invidious comments about others in the employee's protected group or where an employer has exhibited more favorable treatment of employees not in the protected group." *Id.*

Defendant does not seek dismissal with respect to my claim for denial of promotion, but instead seeks dismissal of my claims of unequal terms and conditions of employment and harassment. I was subjected to unequal terms and conditions of employment in that, unlike any other employee supervised by Mr. Tarlentino, a third party was required to be in attendance for every meeting I attended, but not for any other employee. *See* Compl. at ¶¶ 39-40. In addition, in September of 2018, I was suffering from chronic pain and, after having my request for a phone/Skype meeting denied, was required to walk two buildings to Mr. Tarlentino to discuss a CLP document when other employees were not required to have in-person meetings. *Id.* at ¶¶ 43-44. For the foregoing reasons, I have sufficiently alleged claims for harassment and unequal terms and conditions of employment and therefore, Defendant's motion should be denied as to these claims.

C.     **Plaintiff Has Sufficiently Alleged Disability Harassment to Survive a Motion to Dismiss for Failure to State a Claim.**

A plaintiff may establish a claim of disparate treatment either "(1) by showing that he has suffered an adverse job action under circumstances giving rise to an inference of discrimination on the basis of race, color, religion, sex, or national origin, or (2) by demonstrating that harassment on one or more of these bases amounted to a hostile work environment." *Feingold v. New York*, 366 F.3d 138, 149 (2d Cir. 2004). To make out a prima facie case of hostile work environment, a plaintiff must show: (1) that the harassment was sufficiently severe or pervasive as to alter the conditions of the victim's employment and create an abusive working environment and (2) that there is a specific basis for imputing the conduct creating the hostile work environment to the employer. *Myers v. New York*, 2013 U.S. Dist. LEXIS 109705, at *20 (E.D.N.Y. Aug. 2, 2013).

The question of whether harassment amounts to a *prima facie* case of disparate treatment requires consideration of the totality of the circumstances. *See Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 23 (1993). The Court should consider not only the "frequency of the discriminatory conduct"; but also severity, humiliation, interference with work performance, and "the employee's psychological well-being." *Id.* Though "[c]riticism of an employee in the course of evaluating and correcting her work is not, in itself, a materially adverse employment action," *Dimitracopoulos v. City of New York*, 26 F. Supp. 3d 200, 214 (E.D.N.Y. June 4, 2014), such criticism may "support a claim of discrimination [if they are] outside the bounds of appropriate supervision." *Id. See Cherry v. NY City Hous. Auth.,* 2021 U.S. Dist. LEXIS 191353, at *10 (E.D.N.Y. Sep. 30, 2021) ("frequent and offensive" derogatory comments about plaintiff with HIV deemed harassment if it is "of such quality or quantity that a reasonable employee would find the conditions of her employment altered for the worse"); *Schmitt v. City of NY*, 2018 U.S.

Dist. LEXIS 187382, at *15 (E.D.N.Y. Nov. 1, 2018) ("[S]upervisor's comments made in front of plaintiff's colleagues, and ranged from tasteless to cruel and humiliating, created a hostile work environment" because "view[ing] individual incidents in isolation and view[ing] the record in a piecemeal fashion…is not the proper way to address [plaintiff]'s hostile work environment claim").

I have alleged that I was harassed by Terlentino and Howell because of my mental and physical impairments. Specifically, I state that Mr. Tarlentino frequently made "offensive and derogatory" comments about my disabilities, and used non-verbal gestures to refer to my cognitive abilities. *See* Compl. ¶ 17. Mr. Tarlentino told me that I have "issues" and was "not developed enough to be an HRS". *Id.* at ¶ 21. Further, Tarlentino made other comments that I was not capable of listening to him and did not know how to follow orders. *Id.* at ¶ 41. He told me "that is your problem, you can't think," "you are the only one that thinks the way you do," "you don't make sense, you are rambling," and "as usual, it's all in your head." *Id.* While making these comments, Tarlentino would make a finger gesture toward his head. *Id.*

Additionally, Tarlentino falsely accused me of "roaming the halls" and not working, for which he had to apologize to me. *Id.* at ¶ 23. From 2018 until March 2020, Tarlentino criticized my work and would pick out customer service tickets to elevate to Howell, claiming I was not developed enough. *Id.* at ¶ 45. In reality, I was producing an average of 90 tickets, as opposed to 25 tickets the average coworker was producing. *Id.* Ms. Howell would also scrutinize my emails despite customers responding with satisfied responses. *Id.* at ¶ 46. These comments and the associated conduct made me feel intimidated and humiliated, causing me extreme emotional distress. *Id.*

Further, just as with the unsuccessful defendant in *Schmitt* who rejected plaintiff's bathroom requests and refused to transfer plaintiff to a cooler post," Defendant here rejected my request of discussing documents through the phone or Skype when he knew that I was suffering chronic pain in my knee and back in September 2018. *Id.* at ¶ 43. Instead, Tarlentino instructed me to walk two buildings over three times to "discuss documents in person". *Id.* In *Schmitt*, this Court rejected the defendant's claim that the conduct was not "physically threatening" and determined that it was "a genuine issue of fact". *Schmitt*, 2018 U.S. Dist. LEXIS 187382, at \*16.

###### D.   Plaintiff Has Sufficiently Stated a Claim for Retaliation Under Section 501 of the Rehabilitation Act

Retaliation claims are "tested under a three-step burden shifting analysis". *Quinn v. Green Tree Credit Corp.*, 159 F.3d 759, 768 (2d Cir. 1998). First, plaintiff must make out a prima facie case of retaliation. *Id.* Secondly, the burden will shift to the defendant to "articulate a legitimate, non-retaliatory reason for the complained of action." *Id.* Third, if the defendant meets his burden, plaintiff must "adduce evidence sufficient to raise a fact issue as to whether [the employer]'s reason was merely a pretext for retaliation." *Id*. at 769.

To state a prima facie retaliation case under the Rehabilitation Act, a plaintiff has to establish by a preponderance of the evidence that (1) she engaged in an activity protected by the Rehabilitation Act; (2) the employer was aware of that activity; (3) the employer took adverse employment action against her; and (4) a causal connection exists between the alleged adverse action and the protected activity. *Hicks v. Baines*, 593 F.3d 159, 164 (2d Cir. 2010). Courts have "characterized the evidence necessary to satisfy this initial burden as 'minimal' and '*de minimis*'." *Zimmermann v. Assoc. First Capital Corp.*, 251 F.3d 376, 381 (2d Cir. 2001). Therefore, the plaintiff's burden at this prima facie stage is "not onerous". *Chambers v. TRM Copy Centers Corp.*, 43 F.3d 29 (2d Cir. 1994).

Accepting all my allegations as true, and by drawing all reasonable inferences in my favor, all requirements for a prima facie case of retaliation are satisfied here. For the first requirement, the Second Circuit has ruled that a plaintiff "need[s] only demonstrate that she had a 'good faith, reasonable belief that the underlying challenged actions of the employer violated the law". *Quinn*, 159 F.3d at 769. Here, I immediately contacted the EEOC after I was denied the promotion, and later filed a formal charge after mediation failed. *See* Compl. at ¶¶ 32, 35; EEO Decision. My participation in the Defendant's EEO process satisfies the first element. *See Treglia v. Town of Manlius,* 313 F.3d 713, 719 (2d Cir. 2002) (first element satisfied since defendant did "not claim that [the plaintiff] failed to establish the first element of his prima facie case" and the plaintiff properly filed her complaint.). As to the second requirement, Defendant was clearly aware of my protected activity. Defendant participated in the EEO mediation in June 2018 and following that, Tarlentino told me "you are stupid for filing a complaint about Ms. Howell and me" and reminded me that until he deemed me "developed", I would not be promoted. *Id.* at ¶ 36.

As to the third and fourth elements, "there are no bright-line rules with respect to what constitutes an adverse employment action for purposes of a retaliation claim", therefore "courts must pore over each case to determine whether the challenged employment action reaches the level of 'adverse.'" *Fincher v. Depository Trust & Clearing Corp.*, 604 F.3d 712, 721 (2d Cir. 2010). Moreover, "[t]he standard for an adverse employment action in retaliation claims is considerably broader than the standard for discrimination claims under Title VII." *Rivers v. NY City Hous. Auth.*, 176 F. Supp 3d 229, 245 (E.D.N.Y. 2016). The Second Circuit has recognized that "employment discrimination is often accomplished by discreet manipulations and hidden under a veil of self-declared innocence." *Rosen v. Thornburgh*, 928 F.2d 528, 533 (2d Cir. 1991).

15

An employer who discriminates "is unlikely to leave a 'smoking gun,' such as a notation in an employee's personnel file, attesting to a discriminatory intent." *Id.* (Citing *Hollander v. American Cyanamid Co.*, 895 F.2d 80, 85 (2d Cir. 1990); *Dister v. Continental Group, Inc.*, 859 F.2d 1108, 1112 (2d Cir. 1988)). Thus, victims of discrimination are "seldom able to prove their claim by direct evidence and is usually constrained to rely on the cumulative weight of circumstantial evidence." *Id.* "Affirmative efforts to punish a complaining employee are at the heart of any retaliation claim." *Fincher*, 604 F.3d at 721. Defendants argue that all other events alleged by my complaint are not "materially adverse".  However, the Second Circuit has cautioned that "lesser actions may also be considered adverse employment actions," and emphasized that whether an action qualifies as adverse is a "heavily fact-specific, contextual determination." *Rivers*, 176 F. Supp. 3d at 244 (citing *Hoyt v. Andreucci*, 433 F.3d 320, 328 (2d Cir. 2006)). Pervasive comments made by defendants for several years can provide indispensable context for showing their adverse actions with retaliatory motives. *See Demoret v. Zegarelli*, 451 F.3d 140, 152 (2d Cir 2006) ("These actions must be seen in the context of [defendant]'s micromanaging and offensive comments" to draw inferences). The Second Circuit has met similar situations and determined that the cumulative weight of circumstantial evidence suffices to have a cause of action. *See Zelnik v. Fashion Inst. of Tech.*, 464 F.3d 217, 227 (2d Cir. 2006) (a "campaign of harassment which though trivial in detail may [be] substantial in gross, and therefore . . . actionable."); *Phillips v. Bowen*, 278 F.3d 103, 109 (2d Cir. 2002) ("Our precedent allows a combination of seemingly minor incidents to form the basis of a constitutional retaliation claim once they reach a critical mass."). To satisfy the last requirement of establishing a prima facie retaliation case, I "must show that the allegedly adverse actions occurred in circumstances from which a reasonable jury could infer retaliatory intent." *Treglia v. Town of Manlius*, 313 F.3d 713,

720 (2d Cir. 2002). Courts have held that a close temporal relationship between the protected activity and the adverse action is sufficient to establish a causal link. *See Cifra v. GE*, 252 F.3d 205, 217 (2d Cir. 2001) (causal connection needed for proof of a retaliation claim "can be established indirectly by showing that the protected activity was closely followed in time by the adverse action.").

Drawing reasonable inferences from my Complaint, I have made sufficient allegations to establish adverse action and a causal connection to my protected activity. After I filed a formal complaint with the EEOC on August 1, 2018, alleging disability discrimination and reprisal based on the failure to promote me, Tarlentino gave me a lower rating in my annual review. Compl. at ¶ 38; EEOC Dec. at 2. In addition, in August 2018, I was required to complete a Career Learning Plan (CLP) by September. *Id.* at ¶ 42. Both Tarlentino and Howell began to engage in heightened scrutiny and criticism of my Career Learning Plan. Tarlentino told me that if I did not agree with his suggestions, he would not sign any documents related to the CLP. *Id.* During this time, I was suffering from a knee and back flare up, causing chronic pain. *Id.* at ¶ 43. Tarlentino knew of my pain but instructed me to walk two buildings over three times to discuss CLP documents. *Id.* I was informed by a co-worker who was also submitting her CLP that she did not have to meet in person with Tarlentino and she did not have to have a manager sign the document. *Id.* at ¶ 44.

In addition, Tarlentino's harassment of me worsened after I contacted the EEO counselor. For example, he called me "stupid" for filing the complaint and threatened that I wouldn't be promoted until I was more "developed." *Id.* at ¶ 36. Howell made unfounded allegations that I "lied on my resume" and was "not trustworthy", as excuses for not promoting me. *Id.* at ¶ 37. After my evaluation meeting in June 2018, Tarlentino threatened that he could make my

evaluation lower at any time, and told me I wouldn't be promoted because I have "too many issues" and that I'm "not normal", gesturing with a finger to his head. *Id.* at ¶ 38. Right after the EEOC mediation meeting, management assigned another person to surveil me during all meetings, despite the fact that none of the other employees had this happen. *Id.* at ¶¶ 39,40. "When [such] discriminatory effect is present", the courts "must be alert to recognize means that are subtle and explanations that are synthetic." *Robinson v. 12 Lofts Realty, Inc.*, 610 F.2d 1032, 1043 (2d Cir. 1979). These allegations provide cumulative weight to draw a reasonable inference of the existence of adverse actions.

Defendants argue that the lapse of time between the meeting requested by me in February 2017 and the denial of my promotion in April 2018 breaks a causal link. However, Defendant fails to acknowledge that Tarlentino and Howell's discriminatory and retaliatory conduct *began* in 2017, but continued and worsened over time, particularly *after* I was denied the promotion and contacted the EEOC in April 2018.

For the other events, by looking into the temporal proximity, defendants are mistaken by asserting that I failed to establish a causal link between the other events and my protected activities. Within only a month after I officially filed my EEOC complaint, Tarlentino asked me to walk two buildings over to "discuss the document in person". Compl. at ¶ 40. Even though Tarlentino was aware that I was suffering huge pain in my knee and back, he denied my request to talk through the phone and let me walk three times during that hot summer. *Id.* More importantly, specifically asking me to "discuss the documents in person" was inconsistent with Tarlentino's prior behavior, where he "refused to speak to [me] directly" for over a year after my informal meeting with them in February 2017. *Id.* at ¶ 25. Such a one-month close temporal relationship after my protected activity is sufficient to establish a causal link. *See Quinn v. Green*

18

*Tree Credit Corp.*, 159 F.3d 759, 769 (2d Cir. 1998) (two months between protected activity and allegedly adverse action sufficient to establish causation).

## CONCLUSION

For all the forgoing reasons, I respectfully request that the Court deny Defendant's Motion to Dismiss.

Dated:          June  15, 2022

_____
Elizabeth Kramer
Pro Se Plaintiff
72 Sunrise Court Apartment 12
Moriches, NY 11955

**TO:**
The Honorable Joan M.Azrack
Magistrate Judge Steven L. Tiscione
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
100 Federal Plaza
Central Islip, New York 11722

**Megan J. Freismuth**
Assistant United States Attorney
United States Attorney's Office
Eastern District of New York
610 Federal Plaza
Central Islip, New York 11722
Telephone: 631.715.7905
Fax: 631.715.7920
megan.freismuth@usdoj.gov