# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| Elizabeth Kramer,<br><br>       Plaintiff,<br><br>   -v-<br><br>Scott Bessent, as Secretary of the U.S. Department of the Treasury, Internal Revenue Service (IRS),<br><br>       Defendant. | 2:21-cv-3295<br>(NJC) (ST) |

## OPINION AND ORDER

NUSRAT J. CHOUDHURY, United States District Court Judge:

Plaintiff Elizabeth Kramer ("Kramer") initiated this action against Defendant Janet L. Yellen, as Secretary of the U.S. Department of the Treasury ("the Secretary") and the Internal Revenue Service ("IRS," together "Defendants"), for violations of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101, *et seq*. and the Rehabilitation Act of 1973, 29 U.S.C. § 794. (Am. Compl. ¶¶ 1–3, ECF No. 32.)[1] Current Treasury Secretary Scott Bessent was automatically substituted for Yellen pursuant to Rule 25(d) of the Federal Rules of Civil Procedure ("Fed. R. Civ. P."). The Amended Complaint, which is the operative pleading, seeks compensatory and punitive damages and injunctive relief. (Am. Compl. at 17.) Before me is a

---

[1] Although the Amended Complaint brings claims against both the Secretary and the IRS, the proper defendant for Rehabilitation Act claims against a federal agency is the head of the relevant agency. *See* 29 U.S.C. § 794a(a)(1); 42 U.S.C. § 2000e-16(c); *see also Bennett v. Hall*, No. 7:23-cv-6006, 2023 WL 4977714, at *3 (S.D.N.Y. Aug. 3, 2023). The ADA does not apply to the federal government or its agencies. *See infra* Discussion § III. Therefore, I refer throughout this Opinion and Order to the Secretary as the defendant in this action.

Motion to Dismiss the Amended Complaint in its entirety for failure to state a claim under Rule 12(b)(6), Fed. R. Civ. P. (Mot., ECF No. 39.)

For the reasons set forth below, the Secretary's Motion to Dismiss is granted in part and denied in part as follows. Kramer's damages claims for retaliation under the Rehabilitation Act survive the Secretary's Rule 12(b)(6) motion with respect to all alleged retaliatory conduct that occurred after May 23, 2018, except allegations relating to the failure to promote Kramer. Kramer's claims for disparate treatment, failure to accommodate, and hostile work environment under the Rehabilitation Act are dismissed without prejudice under Rule 12(b)(6) with leave to file a second amended complaint pleading a qualified disability. Kramer's claims for injunctive relief are dismissed for lack of subject matter jurisdiction under Rule 12(h), Fed. R. Civ. P. All other claims set forth in the Amended Complaint are dismissed with prejudice under Rule 12(b)(6).

Kramer shall file any second amended complaint in compliance with this Opinion and Order by September 17, 2025. By October 3, 2025, Defendants shall file any letter motions seeking a pre-motion conference in anticipation of any motion to dismiss, in the event that Kramer files a second amended complaint. Kramer shall file any response letter by October 17, 2025.

## FACTS

In evaluating the Secretary's Motion to Dismiss under Rule 12(b)(6), I accept as true all well-pled allegations in the Amended Complaint and draw all reasonable inferences in favor of Kramer. *Whiteside v. Hover-Davis, Inc.*, 995 F.3d 315, 318 n.2 (2d Cir. 2021).[2] As explained

---

[2] Unless otherwise indicated, case quotations omit all internal quotation marks, citations, footnotes, and alterations.

below in Discussion Section II, I also consider Kramer's equal employment opportunity ("EEO") complaints with the Department of the Treasury's internal Office of Civil Rights and Diversity, and that Office's communications regarding Kramer's EEO complaints, because these complaints are integral to the Amended Complaint. *See Clark v. Hanley*, 89 F.4th 78, 93 (2d Cir. 2023) (permitting a court to consider documents integral to the complaint in assessing a Rule 12(b)(6) motion).

Kramer was an IRS employee from at least 2017 through at least 2023. (Am. Compl. ¶¶ 1, 6, 11, 64.) Joseph Tarlentino ("Tarlentino") was Kramer's supervisor. (*Id.* ¶ 7.) Nadine Howell ("Howell") was the Operation Chief of the "NCAC," an entity undefined in the Amended Complaint. (*Id.* ¶ 17.)

The Amended Complaint alleges that Kramer has a "disability, which includes mobility limitations" and that this "disability" was "well-known to the IRS and its management" including Tarlentino, who knew about Kramer's "physical limitations and the associated pain." (*Id.* ¶¶ 9, 28.)[3] The Amended Complaint also alleges that Kramer had a "bi-polar condition" and experienced "excessive stress . . . as a result of the agency's actions," which "exacerbated her

---

[3] Excerpts from the Amended Complaint and the parties' submissions are reproduced here exactly as they appear in the original documents. Errors in spelling, punctuation or grammar will not be corrected or noted.

pre-existing conditions, leading to escalated episodes of syncope and behavioral issues related to her bipolar disorder." (*Id.* ¶¶ 33, 46.)

## I.    Derogatory Comments from February 2017 through January 2018[4]

The Amended Complaint alleges that from February 2017 through January 2018, Tarlentino and Howell made a number of derogatory remarks towards Kramer. Specifically, the Amended Complaint alleges the following:

- At some point after February 2017, Tarlentino made "derogatory gestures and comments towards [Kramer] even after she explicitly told him to stop." (*Id.* ¶ 12.) "He would only smirk in response, dismissing Plaintiff's objections." (*Id.*)

- In February 2017, Kramer was "falsely accused by Mr. Tarlentino of 'roaming the halls' and not working." (*Id.* ¶ 51.)

- In March 2017, "Mr. Tarlentino stated that Ms. Kramer was 'incapable of listening,' 'did not know how to follow orders,' and 'always rambled.'" (*Id.* ¶ 52.)

- In April 2017, Tarlentino again made comments, this time in front of coworkers, that Kramer "was 'incapable of having a '0' error rate,' 'had issues,' and 'always rambled.'" (*Id.* ¶ 53.)

- In May 2017, during a meeting with Kramer and Howell, Howell made "sarcastic comments about [Kramer's] deceased ex-husband and her bipolar disorder," questioned Kramer's "fitness to work," and "made derogatory remarks about her ability to handle stress." (*Id.* ¶ 54.)

- From June 2017 through September 2017, in one-on-one meetings, Tarlentino "persistently made derogatory comments about Ms. Kramer's capabilities, intelligence, and mental state," including accusing Kramer of being "'stupid,' 'untrustworthy,' 'incapable of listening,' and 'unable to follow orders.'" (*Id.* ¶ 55.)

- In January 2018, immediately after Kramer had received news of her mother's death, Howell "insisted" that Kramer respond to her via Skype and "questioned

---

[4] The Amended Complaint does not explicitly allege any actions that Kramer's supervisors took before February 2017, but alleges that, in February 2017, Kramer met with Nadine Howell and Tarlentino "to address the harassment directly" and "to inform them that the conduct was unwelcome and must stop." (Am. Compl. ¶ 11.)

her usage of the Family Medical Leave Act (FMLA) and her ability to work." (*Id.* ¶ 56.)

## II.    April 2018 – Denial of Human Resources Specialist Position

Around April 25, 2018, Kramer was notified by Tarlentino "that she was not selected for the HR Specialist position." (*Id.* ¶ 14.)

## III.    First EEO Complaint

On May 23, 2018, Kramer first initiated contact with a counselor within the Department of the Treasury's EEO department. (ECF No. 41-1 at 1.) On May 29, 2018, Kramer told the EEO counselor that she was not selected for the Human Resources Specialist position "due to her mental disability." (*Id.* at 2.) Kramer reported that "she openly talks about her mental Disability and she's a advocate for people with Disabilities." (*Id.*)

On August 1, 2018, Kramer filed her first EEO complaint of employment discrimination, alleging that she experienced discrimination when not selected for the Human Resources Specialist position on April 25, 2018, and when, on June 13, 2018, she received her 2018 annual appraisal with a lower rating than she believed she deserves. (ECF No. 41-2 at 3–4.) In the EEO complaint, Kramer also alleged, "Ever since Mr. Tarlentino officially became my immediate supervisor, I have felt that I have had my work reviewed more intently due to my disability, rather than the other peers in his group." (*Id.* at 2.)

On October 7, 2018, Kramer requested leave to amend her first EEO complaint to add an allegation that the Secretary discriminated against her based on her disability and in retaliation for filing the first EEO complaint when, on October 2, 2018, "management scrutinized and criticized her Career Learning Plan (CLP)." (ECF No. 41-3.) The Secretary granted Kramer leave to amend on October 24, 2018. (*Id.*)

## IV.    Scrutiny and Criticism between April 2018 and September 2019

From April 2018 to April 2019, Howell, Tarlentino, and two other individuals—"Ms. Tavano" and "Ms. Barbeau"—"excessively scrutinized" Kramer's work, making "unwarranted accusations and exaggerat[ing] any errors" Kramer made. (Am. Compl. ¶ 57.)[5] From May 2019 to September 2019, Howell "continued to question and criticize Ms. Kramer's work, despite receiving numerous customer service congratulations and positive feedback." (*Id.* ¶ 58.)

## V.    Second EEO Complaint

On June 3, 2019, Kramer again contacted the EEO Office. (ECF No. 41-4 at 2.) During this contact, Kramer told the EEO representative that she was being harassed by her manager, Tarlentino, in retaliation for her EEO involvement. (*Id.*) Kramer reported that, on May 9, 2019, in a meeting with Tarlentino and another secretary, Tarlentino falsely accused Kramer of "continuously interrupting," "rambling," and causing the secretary in their office to stay a half-hour past the end of her workday. (*Id.*; *see also* ECF No. 41-5)

On July 30, 2019, Kramer filed a second EEO complaint. (ECF No. 41-6.) In this complaint, Kramer alleged that she experienced both retaliation and discrimination as a result of the following: (1) Tarlentino's actions during the May 9, 2019 meeting; (2) Tarlentino's actions during a performance appraisal meeting on June 10, 2019, when Tarlentino asked another employee to be present again, and falsely accused Kramer of stuttering and being confused; and (3) the fact that Kramer's annual appraisal rating in 2019 was lower than it should have been. (*Id.*) On August 23, 2019, Kramer requested to amend her second EEO complaint to add a claim that the IRS had harassed her based on her disability and in retaliation for prior protected activity

---

[5] The Amended Complaint does not allege what positions Tavano or Barbeau held within the IRS during the time period at issue.

when she was not selected for a Human Resources Specialist position. (ECF No. 41-7.) The EEO office accepted this proposed amendment through an undated letter. (*Id.*) Kramer requested to amend her second EEO complaint for a second time on October 21, 2019, to add a claim that, on October 18, 2019, management discriminated and retaliated against her when it scrutinized her email response to a customer. (ECF No. 41-8.) The EEO office again granted this amendment through an undated letter. (*Id.*)

## VI.    Derogatory Remarks, Accusations of Dishonesty, and Disregarding Feedback From October 2019 through April 2020

The Amended Complaint alleges that Kramer experienced the following behavior from Howell and Tarlentino from October 2019 through April 2020:

- From October 2019 through November 2019, "Ms. Howell made derogatory remarks during an operation meeting, implying that Ms. Kramer was not capable of working independently." (*Id.* ¶ 59.)

- In December 2019, Howell accused Kramer "of lying on her resume and being untrustworthy, despite the lack of evidence supporting these claims." (*Id.* ¶ 60.)

- From January 2020 to February 2020, Tarlentino "disregarded" Kramer's feedback on her appraisal and statements that the appraisal did not accurately reflect her performance, and "her appraisal remanded unchanged." (*Id.* ¶ 61.)

- In April 2020, "Ms. Tavano accused Ms. Kramer of lying during an interview, alleging that she had lied on her resume. Despite providing evidence to refute these accusations, Ms. Kramer's credibility was questioned and her character was unfairly attacked." (*Id.* ¶ 62.)

## VII.    Undated Allegations

The Amended Complaint alleges additional actions by the IRS generally and Howell and Tarlentino specifically, without specifying the dates or even years in which the actions allegedly took place. Specifically, the Amended Complaint alleges that the following incidents occurred on some unspecified date:

- Management "resist[ed]" and "disbelie[ved]" Kramer's attempts to report harassment, and she "was repeatedly told that she could not prove anything because there were no witnesses or written records of the incidents." (*Id.* ¶ 13.)

- The IRS refused to allow Kramer's co-workers to "provide testimonies on Plaintiff's behalf to validate her claims of discriminatory treatment and retaliation." (*Id.* ¶ 15.)

- The IRS "failed to provide the interview notes and other relevant documentation related to Plaintiff's non-selection, hindering her ability to dispute the management's claims that she lied on her resume and performed poorly during the interview." (*Id.* ¶ 16.)

- Howell discredited Plaintiff's chances of promotion by "making false accusations about her work, character, and previous EEO activity to other recommending officials within the agency." (*Id.* ¶ 17.)

- "Plaintiff requested recommendation emails from coworkers . . . that contradicted Ms. Howell's claims" but "the agency denied access to these testimonies and notes from the interviews conducted at the Brookhaven Service Center." (*Id.* ¶ 18.)

- Kramer "was consistently overlooked for promotion based on her disability and prior protected activity." (*Id.* ¶ 19.)

- "Tarlentino exhibited biased treatment towards" Kramer, including "criticiz[ing] her work excessively, talk[ing] about her in the third person to other employees, and subject[ing] her to heightened scrutiny compared to her colleagues, especially Ms. Mary Smith." (*Id.* ¶ 21.)

- "Tarlentino selectively targeted Plaintiff, scrutinizing her work and attempting to discredit her performance even when customers expressed satisfaction with her responses and guidance. He would deliberately elevate customer service tickets to Ms. Howell to create a false narrative of poor performance and justify their discriminatory actions." (*Id.* ¶ 22.)

- The IRS "and its management deliberately undermined [Kramer's] achievements and created obstacles to her professional growth and advancement." (*Id.* ¶ 23.)

- "Management insisted on having additional individuals, such as Ms. Barbeau, Ms. Tavano, or Ms. Sorrenti, present in all meetings or discussions with Mr. Tarlentino, under the pretext of taking meeting minutes," and Tarlentino "evaded" answering Kramer's questions about the need for additional individuals to be present in meetings. (*Id.* ¶¶ 24–25.)

- "Plaintiff's career learning plan (CLP) was also subject to unfair treatment by Mr. Tarlentino. Despite providing valuable suggestions for her CLP, Mr. Tarlentino subjected Plaintiff to disparaging treatment and undue scrutiny, unlike Ms. Krystiana, who was also under his supervision during the CLP process." (*Id.* ¶ 26.)

- Tarlentino "intimidate[d] Plaintiff, demanding that she include his suggestions in her CLP, even when she disagreed or believed they were unnecessary" and "made it clear that he would not sign her document unless it met his demands." (*Id.* ¶ 27.)

- "Plaintiff faced additional challenges with her computer crashing and had to use a temporary workstation with a corrupted file. Despite knowing about Plaintiff's physical limitations and the associated pain, Mr. Tarlentino insisted on a face-to-face meeting in his office to discuss her CLP, disregarding her request for an alternative form of communication." (*Id.* ¶ 28.)

- "Mr. Tarlentino exploited Plaintiff's condition, making her walk to his office multiple times, knowing that the document had issues," causing Kramer to "experience[] significant physical pain." (*Id.* ¶¶ 29–30.)

- "Ms. Krystiana Nelson, another employee under Mr. Tarlentino's supervision, did not experience the same mistreatment during the CLP process. Ms. Nelson confirmed that she did not need Mr. Tarlentino's signature and could send her document independently. However, Plaintiff was denied the opportunity to present evidence of differential treatment towards Ms. Nelson, depriving her of a fair assessment of her claim. The IRS's actions and management's conduct violated its own Code of Ethics and hindered Plaintiff's rightful progression to a higher position. Plaintiff's truthful presentation of facts, knowledge, character, skills, and abilities were distorted and used against her by the agency's management." (*Id.* ¶ 31–32.)

- "Despite Plaintiff's subsequent complaint and mediation meeting, retaliation persisted and even escalated. Management insisted on having additional individuals present in meetings or discussions, falsely claiming the need for meeting minutes, which created a hostile and oppressive environment for Plaintiff." (*Id.* ¶ 34.)

**PROCEDURAL HISTORY**

Kramer filed the original complaint in this action on June 11, 2021. (ECF No. 1.) At that time, Kramer was proceeding without representation by counsel. (*Id.*) In the original complaint, Kramer alleged that a series of interactions with her direct supervisor, Tarlentino, between 2015 and 2018 constituted disparate treatment based on her disabilities and retaliation, in violation of Section 501 of the Rehabilitation Act. (*Id.*)

9

The Secretary filed a motion to dismiss the original complaint pursuant to Rule 12(b)(6). (ECF No. 18.) Judge Joan M. Azrack, to whom this case was previously assigned, referred the motion to dismiss to Magistrate Judge Steven Tiscione by electronic order on October 20, 2022.

On December 27, 2022, Judge Tiscione issued a Report and Recommendation ("R&R") in which he recommended that the complaint be dismissed in its entirety under Rule 12(b)(6), but that Kramer be permitted leave to amend. *Kramer v. Yellen*, No. 21-cv-3295, 2022 WL 18775410 (E.D.N.Y. Dec. 27, 2022), ECF No. 25, *report and recommendation adopted*, 2023 WL 2036025 (E.D.N.Y. Feb. 16, 2023). Kramer objected to the R&R and Judge Azrack conducted a de novo review of the record and adopted Judge Tiscione's Report and Recommendation over Kramer's objection on February 16, 2023. ECF No. 26; *Kramer v. Yellen*, No. 21-cv-3295, 2023 WL 2036025 (E.D.N.Y. Feb. 16, 2023), ECF No. 27. Just over a month later, on March 20, 2023, Kramer's current counsel filed a notice of appearance on her behalf. (ECF No. 28.)

On May 22, 2023, Kramer filed the Amended Complaint with representation by counsel. (Compl., ECF No. 32.) On March 21, 2024, the Secretary filed the fully briefed Motion to Dismiss in this case, which includes: (1) the Secretary's memorandum of law in support of her motion (Def.'s Br., ECF No. 40) and a supporting declaration by attorney Megan J. Freismuth ("Freismuth" and "Friesmuth Declaration") and attached exhibits ("Freismuth Decl., ECF No. 41"); (2) Kramer's memorandum of law in opposition to the motion (Pl.'s Opp'n, ECF No. 42); and (3) the Secretary's reply memorandum (Def.'s Reply, ECF No. 43).

## JURISDICTION

This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1343 because the Amended Complaint alleges violations of federal law under 42 U.S.C. § 12101 and 29 U.S.C. § 794. (Am. Compl. ¶¶ 66–90.)

Venue in the Eastern District of New York is proper under 28 U.S.C. § 1391(b)(2) because the alleged events took place in the Eastern District of New York. (Am. Compl. ¶ 5.)

## LEGAL STANDARDS

A complaint must plead sufficient facts to "state a claim to relief that is plausible on its face." *Int'l Code Council, Inc. v. UpCodes Inc.*, 43 F.4th 46, 53 (2d Cir. 2022) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). In determining whether a claim is sufficiently plausible to withstand dismissal under Rule 12(b)(6), a court "accept[s] all factual allegations as true" and "draw[s] all reasonable inferences in the plaintiff's favor." *Herrera v. Comme des Garcons, Ltd.*, 84 F.4th 110, 113 (2d Cir. 2023). Nevertheless, a court is "not required to credit conclusory allegations or legal conclusions couched as factual allegations." *Melendez v. Sirius XM Radio, Inc.*, 50 F.4th 294, 307 (2d Cir. 2022). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (2009). The plausibility standard requires "more than a sheer possibility that a defendant has acted unlawfully." *Id.*; *accord Schiebel v. Schoharie Central Sch. Dist.*, 120 F.4th 1082, 1106 (2d Cir. 2024). While "detailed factual allegations" are not required, "a pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do." *Iqbal*, 556 U.S. at 678. A complaint fails to state a claim "if it tenders naked assertions devoid of further factual enhancement." *Id.*

**DISCUSSION**

## I.    Article III Standing

In the prayer for relief section of the Amended Complaint, Kramer seeks compensatory damages, punitive damages, and "[e]quitable relief, including an injunction preventing further discrimination, retaliation, and harassment." (Am. Compl. at 32.) "Because the question of standing goes to the constitutional limitations on the judicial Power of the United States," courts "are entitled at any time sua sponte to delve into the issue of standing even if defendants do not raise the issue." *Green Haven Prison Preparative Meeting of Religious Soc'y of Friends v. N.Y. Dep't of Corr. & Cmty. Supervision*, 16 F.4th 67, 78 (2d Cir. 2021).

In order to establish Article III standing, a plaintiff must show: "(1) that they suffered an injury in fact, (2) that the injury is fairly traceable to Defendants' challenged conduct, and (3) that the injury is likely to be redressed by a favorable judicial decision." *Soule v. Conn. Ass'n of Schs.*, 90 F.4th 34, 45 (2d Cir. 2023) (citing *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016)). A "plaintiff[] must demonstrate standing for each claim that they press and for each form of relief that they seek." *Id.* (citing *TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021)).

Kramer has standing to sue for damages on her Rehabilitation Act claims. The Complaint and the documents integral to it allege that she suffered past injury in fact in the form of, among other things, not being promoted to the Human Resources Specialist position and receiving two performance appraisals that did not accurately reflect her performance. (Am. Compl. ¶¶ 14, 61; ECF No. 41-6 at 2; *infra* Discussion § II.) These injuries are fairly traceable to the Secretary's alleged conduct and a favorable judicial decision would redress these injuries with the payment of damages.

The Amended Complaint does not, however, establish that Kramer has standing to pursue injunctive relief on her claims under either the ADA or the Rehabilitation Act because it does not allege any ongoing or future injuries. Where a "plaintiff[] seek[s] injunctive or declaratory relief, they cannot rely on past injury to satisfy the injury requirement but must show a likelihood that they will be injured in the future." *Dorce v. City of New York*, 2 F.4th 82, 95 (2d Cir. 2021). "Such an allegation of future injury will be sufficient only if the threatened injury is certainly impending, or there is a substantial risk that the harm will occur." *Id.* (citing *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014)). Here, the Amended Complaint not only fails to include any allegations about an ongoing or future injury, but it also pleads that Kramer was eventually transferred out of her previous role in NCAC to "OCR," an entity undefined in the Amended Complaint, where she "has not experienced any harassment or emotional stress." (Am. Compl. ¶ 63.) According to the Amended Complaint, Kramer now works at the Office of Strategy, HCO, Human Capital Strategy & Planning Governance and Advisory Services Operation. (*Id.* ¶ 64.) There is no allegation that Tarlentino, Howell, Barbeau, Tavano, Sorrenti, or any of Kramer's other supervisors, managers, or colleagues have engaged with her since her transfer out of her role at NCAC. Therefore, Kramer's claims for injunctive relief are dismissed for lack of subject matter jurisdiction under Rule 12(h), Fed. R. Civ. P., because the Amended Complaint does not allege any current, ongoing injury or any injury that is either certainly impending or that there is a substantial risk that the alleged past harms will recur.

13

## II.    Extrinsic Evidence

As a threshold matter, I must determine whether I may consider facts set forth in the following documents, which are attached to the Freismuth Declaration offered in support of the Secretary's Rule 12(b)(6) motion:[6]

- Kramer's first EEO counseling intake form, dated May 23, 2018 (Freismuth Decl. ¶ 2; ECF No. 41-1);

- Kramer's first EEO complaint, dated August 1, 2018, with the corresponding acceptance letter, dated August 10, 2018 (Freismuth Decl. ¶ 3; ECF No. 41-2);

- an acceptance letter, dated October 24, 2018, granting Kramer's October 7, 2018 amendment of the first EEO Complaint (Freismuth Decl. ¶ 4; ECF No. 41-3);

- Kramer's second EEO counseling intake form, dated June 3, 2019 (Freismuth Decl. ¶ 5; ECF No. 41-4);

- a portion of the second EEO counseling report, dated July 31, 2019 (Freismuth Decl. ¶ 6; ECF No. 41-5);

- Kramer's second EEO Complaint, dated July 30, 2019, with the corresponding undated acceptance letter (Freismuth Decl. ¶ 7; ECF No. 41-6);

- an undated letter granting Kramer's August 23, 2019 request to amend her second EEO complaint (Freismuth Decl. ¶ 8; ECF No. 41-7); and

- an undated letter granting Kramer's October 21, 2019 request to again amend her second EEO complaint (Freismuth Decl. ¶ 9; ECF No. 41-8).

At the motion to dismiss stage, a court may consider documents that are incorporated by reference in the complaint, integral to the complaint, or otherwise the subject of judicial notice. *Clark*, 89 F.4th at 93. In order for a document to be incorporated by reference in the complaint, "the complaint must make a clear, definite and substantial reference to the document[]." *Jajati v. JPMorgan Chase Bank, N.A.*, 711 F. Supp. 3d 169, 173 (E.D.N.Y. 2024); *see also Trump v. Vance*, 977 F.3d 198, 210 n.8 (2d Cir. 2020). In order for a document to be integral to the

---

[6] Kramer does not object to the consideration of these documents. (*See* Pl.'s Opp'n.)

14

complaint, "the plaintiff must have (1) actual notice of the extraneous information and (2) relied upon the document[] in framing the complaint." *Jajati*, 711 F. Supp. 3d at 173; *see also Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002). "In cases where exhaustion of administrative remedies is a prerequisite to bringing suit, a court may take judicial notice of records and reports of the relevant administrative bodies, as well as the facts set forth therein. *Shaw v. U.S. Postal Serv.*, No. 09-cv-6617, 2010 WL 3749233, at *9 n.9 (S.D.N.Y. Aug. 16, 2010) (collecting cases), *report and recommendation adopted*, 2010 WL 3767115 (S.D.N.Y. Sept. 27, 2010).

The Amended Complaint references Kramer's communications with the EEO and the subsequent EEO investigations, although it does not explicitly allege the dates on which Kramer filed EEO complaints or their contents. (*See* Am. Compl. ¶ 17 (alleging that Howell "discredited Plaintiff's chances of promotion by making false accusations about her work, character, and previous EEO activity to other recommending officials within the agency"); *id.* ¶ 36 ("Prior to Ms. Howell's retirement on March 31, 2020, she persisted in making false statements to EEO investigators, falsely accusing Plaintiff of lying on her resume . . . ."); *id.* ¶ 48 ("The EEO advised Plaintiff to initiate a new complaint, which was currently pending.").) Based on these allegations, Kramer's EEO complaints and other correspondence with the EEO regarding those complaints are integral to the Amended Complaint because Kramer had actual notice of these documents and relied upon them when framing the Amended Complaint. *Jajati*, 2024 WL 99659, at *2. Further, because "[e]xhaustion of administrative remedies is a precondition to civil suit under . . . the Rehabilitation Act," the Amended Complaint necessarily refers to and relies on documents exhibiting proof of exhaustion. *Thomas v. Dep't of Veterans Affs.*, No. 05-cv-5348, 2006 WL 1636738, at *9 (S.D.N.Y. Apr. 3, 2006). The attachments to the Fresimuth Declaration

15

are all documents exhibiting proof of exhaustion as they consist of Kramer's EEO counseling forms, the EEO complaints themselves, and letters indicating that the Department of the Treasury, Office of Civil Rights and Diversity had either received Kramer's EEO complaints or granted her request to amend an EEO complaint. *See* ECF Nos. 41-1 through 41-8; *see also* 29 C.F.R. § 1614.105(a)(1); *Lee v. Saul*, No. 19-cv-6553, 2022 WL 1051216, at *3 (S.D.N.Y. Feb. 10, 2022) ("Under EEOC regulations, the employee must first seek EEO counseling within forty-five days of the allegedly discriminatory act." (citing *Boos v. Runyon*, 201 F.3d 178, 181 (2d Cir. 2000))); *id.* ("In order for the court to consider a particular claim of alleged discrimination, it must have been either explicitly raised during the EEO process or be reasonably related to claims that were."). It is therefore appropriate to consider the attachments to the Freismuth Declaration in deciding the Secretary's motion to dismiss. *Clark*, 89 F.4th at 93.[7]

### III.    ADA Claims

The Secretary seeks dismissal of Kramer's ADA claims because the ADA does not apply to the federal government. (Def.'s Br. at 6.) Although the ADA does not apply to federal agencies or their officers, *Cellular Phone Taskforce v. F.C.C.*, 217 F.3d 72, 73 (2d Cir. 2000), the Second Circuit has recognized that the Rehabilitation Act provides federal employees with an essentially identical remedy for employment discrimination based on disability, *Henrietta D. v. Bloomberg*, 331 F.3d 261, 272 (2d Cir. 2003); *see also Knope v. Garland*, No. 20-3274-cv, 2021 WL 5183536, at *1 n.2 (2d Cir. Nov. 9, 2021) (citing 29 U.S.C. § 791(f)). Kramer does not dispute this. (*See* Pl.'s Opp'n at 5–6 ("Section 501 of the Rehabilitation Act is the exclusive avenue for federal employees to raise claims of employment discrimination on the basis of

---

[7] The Amended Complaint also incorporates by reference at least one of Kramer's EEO complaints because it makes a "clear, definite and substantial reference to" Kramer's "currently pending" complaint. *Jajati*, 2024 WL 99659, at *2; Am. Compl. ¶ 48.

disability").) The rule against bringing ADA claims against federal agencies applies equally to the Secretary as to the IRS. *See Sherman v. Black*, 510 F. Supp. 2d 193, 197 (E.D.N.Y. 2007) ("The United States, its agencies, and employees are not public entities under the ADA."), *aff'd*, 315 F. App'x 347 (2d Cir. 2009). Thus, the ADA claims in the Amended Complaint are dismissed with prejudice pursuant to Rule 12(b)(6), Fed. R. Civ. P.

## IV.   Rehabilitation Act Claims

Section 501 of the Rehabilitation Act, 29 U.S.C. § 791, prohibits discrimination on the basis of disability in employment decisions by the federal government. *Lane v. Pena*, 518 U.S. 187, 193 (1996); 29 C.F.R. § 1614.203(b) ("Federal agencies shall not discriminate on the basis of disability in regard to the hiring, advancement or discharge of employees, employee compensation, job training, or other terms, conditions, and privileges of employment.").[8] The Second Circuit has recognized that "the Rehabilitation Act provides federal employees with an essentially identical remedy [to the ADA] for employment discrimination based on disability." *Knope*, 2021 WL 5183536, at *1 n.2. Further, claims under the Rehabilitation Act and claims under Title I of the ADA are analyzed under the same standards. 29 U.S.C. § 791(f); *Veldran v. Dejoy*, 839 F. App'x 577, 578 (2d Cir. 2020); 29 C.F.R. § 1614.203. Accordingly, I consider caselaw interpreting both statutes when analyzing Kramer's Rehabilitation Act claims. *Francis v. City of Meriden*, 129 F.3d 281, 284 n.4 (2d Cir. 1997); *see also* 29 C.F.R. § 1614.203(b); *Hodges v. Holder*, 547 F. App'x 6, 6 n.1, 7–8 (2d Cir. 2013).

Claims under the Rehabilitation Act include: (1) a disparate treatment claim challenging an adverse employment action based on disability, *Porter*, 92 F.4th 129, 148 (2d Cir. 2024); (2) a

---

[8] 29 C.F.R. § 1614.203(a)(8) "The term Section 501 means section 501 of the Rehabilitation Act of 1973, as amended (29 U.S.C. 791).").

hostile work environment claim based on disability, *Pistello v. Bd. of Educ. of Canastota Cent. Sch. Dist.*, 808 F. App'x 19 (2d Cir. 2020), *see also Fox v. Costco Wholesale Corp.*, 918 F.3d 65, 74 (2d Cir. 2019) (ADA claims); and (3) a claim of failure to provide "reasonable accommodations to the known physical or mental limitations of an otherwise qualified" employee with a disability. *Porter*, 92 F.4th at 148, 29 U.S.C. § 794(d). With respect to a failure-to-accommodate claim, "[u]nless the employer can demonstrate that an accommodation would impose on its operations undue hardship, the denial of a reasonable accommodation constitutes prohibited discrimination." *Porter*, 92 F.4th at 148. An employee must allege a qualifying disability to bring any of these Rehabilitation Act claims. *See, e.g.*, *Smith v. Hogan*, 794 F.3d 249, 253 (2d Cir. 2015) (affirming the dismissal of an employment discrimination claim for failure to plead that termination was "because of a qualifying disability" under either the Rehabilitation Act or the ADA); *Farina v. Branford Bd. of Educ.*, 458 F. App'x 13, 17 (2d Cir. 2011) (affirming the grant of summary judgment on disparate treatment claim, failure-to-accommodate claim, and hostile work environment claims where the plaintiff did not submit evidence establishing a disability within the meaning of the ADA (citing *Brennan v. Metro. Opera Ass'n*, 192 F.3d 310, 318 (2d Cir. 1999))).

An employee may bring a fourth type of Rehabilitation Act claim to challenge retaliation for taking an action to "protest or oppose" disability discrimination. *See Natofsky v. City of New York*, 921 F.3d 337, 354 (2d Cir. 2019) (ADA claims); *Knope*, 2021 WL 5183536, at *4 (Rehabilitation Act claims). A Rehabilitation Act retaliation claim may proceed even where the employee does not have "a disability . . . so long as he can establish that he possessed a good faith, reasonable belief that the underlying challenged actions of the employer violated" the

Rehabilitation Act. *Sharikov v. Philips Medical Systems MR, Inc.*, 103 F.4th 159, 170 (2d Cir. 2024) (ADA claims).

Kramer brings four claims under the Rehabilitation Act: disparate treatment, hostile work environment, failure to accommodate, and retaliation. (Am. Compl. at 14–17.) The Amended Complaint pleads the retaliation claim based on "adverse employment actions against [Kramer], *including but not limited to* non-selection for promotion, lower performance ratings, increased scrutiny, and unwarranted disciplinary actions." (Am. Compl. ¶ 77 (emphasis added).) Although the Amended Complaint does not use the term "retaliatory hostile work environment," considering the facts alleged and the fact that the Amended Complaint asserts a separate hostile work environment claim based on the same conduct, I understand the Amended Complaint to allege that Kramer experienced retaliation in the form of both alleged discrete retaliatory actions and an alleged retaliatory hostile work environment based on the aggregation of numerous actions.[9]

    a.  Exhaustion of Administrative Remedies

The Secretary argues that Kramer has failed to exhaust her administrative remedies with respect to some of her Rehabilitation Act claims because: (1) allegations of conduct that occurred before April 8, 2018—i.e., more than 45 days before Kramer's first contact with the EEO on May 23, 2018—are time barred, (Def.'s Br. at 8); (2) the remaining conduct alleged in the Amended Complaint was not raised with the EEO and is not "reasonably related" to claims that

---

[9] Kramer's opposition brief characterizes her claim as retaliatory hostile work environment without explicitly using that term. (*See, e.g.*, Pl's. Opp'n at 18 ("The Amended Complaint meticulously documents instances that, *when considered collectively*, satisfy the criteria for retaliation." (emphasis added)); *id.* at 19 ("The incidents described . . . contribut[ed] to a hostile work environment . . . [that] *when viewed in the aggregate*, could deter a reasonable employee from engaging in protected activity." (emphasis added)).)

Kramer did exhaust. (*Id.* at 12–14.)  Kramer contends that the allegations of conduct that occurred before April 8, 2018 are timely under the continuing violation doctrine and the allegations subsequent to the filing of Kramer's EEO complaints are "reasonably related" to those Kramer did exhaust. (Pls.' Opp'n at 6.)

Any Rehabilitation Act claims premised on allegations of conduct that took place before April 8, 2018 are time barred and the remaining conduct not raised with the EEO is not "reasonably related" to Kramer's timely disparate treatment and retaliation claims. However, many of the allegations concerning conduct that followed Kramer's May 23, 2018 first contact with the EEO are "reasonably related" to Kramer's retaliation claim.

### i. Legal Standards

Before initiating a federal suit under the Rehabilitation Act, a plaintiff must exhaust their claims in accordance with Equal Employment Opportunity Commission ("EEOC") regulations. *Boos*, 201 F.3d at 181; *Smith v. Colvin*, 574 F. App'x 55, 55–56 (2d Cir. 2014)). "[T]he claim must have been either explicitly raised during the EEO process or be 'reasonably related' to claims that were." *Atencio v. U.S. Postal Serv.*, No. 14-cv-7929, 2015 WL 7308664, at *5 (S.D.N.Y. Nov. 19, 2015) (citing *Williams v. N.Y.C. Hous. Auth.*, 458 F.3d 67, 70 (2d Cir. 2006) (Title VII)). A federal employee must "initiate contact with an EEO counselor within 45 days of the date of the matter alleged to be discriminatory." *Tassy v. Buttigieg*, 51 F.4th 521, 531 (2d Cir. 2022) (citing 29 C.F.R. § 1614.105(a)(1)).[10] "This 45-day period serves as a statute of limitations; thus, as a general rule, claims alleging conduct that occurred more than 45 days prior

---

[10] "The Second Circuit has treated the requirement that a federal employee bring a complaint to his or her EEO for resolution, as analogous to the requirement that a private sector employee first bring a complaint to the attention of the EEOC for resolution." *Atencio*, 2015 WL 7308664, at *5 (citing *Mathirampuzha v. Potter*, 548 F.3d 70, 75 (2d Cir. 2008)).

to the employee's initiation of administrative review are time-barred." *Tassy*, 51 F.4th at 531

(Title VII); *see also Boos*, 201 F.3d at 184–85 (Rehabilitation Act).[11]

A plaintiff may still bring claims for conduct predating the 45-day limitations period if

such conduct falls within the "continuing violation" exception. *King v. Aramark Servs. Inc.*, 96

F.4th 546, 559 (2d Cir. 2024). The exception applies when there is (1) "proof of specific ongoing

discriminatory policies or practices" or (2) proof that "specific and related instances of

discrimination are permitted by the employer to continue unremedied for so long as to amount to

a discriminatory policy or practice." *Cornwell v. Robinson*, 23 F.3d 694, 704 (2d Cir. 1994); *see

also Tassy*, 51 F.4th at 532 ("The doctrine applies to claims composed of a series of separate acts

that collectively constitute one unlawful practice . . ."); *King*, 96 F.4th at 559; *Massaro v. N.Y.C.

Dep't of Educ.*, No. 21-266-cv, 2022 WL 1788203, at *2 (2d Cir. June 2, 2022) (summary order).

Courts emphasize that the "continuing violation" doctrine does not apply to "discrete unlawful

acts, even where those discrete acts are part of a serial violation," but rather to "claims that by

their nature accrue only after the plaintiff has been subjected to some threshold amount of

mistreatment." *Tassy*, 51 F.4th at 532; *Trinidad v. N.Y.C. Dep't of Corr.*, 423 F. Supp. 2d 151,

165 n.11 (S.D.N.Y. 2006) (noting that "courts have been loath to apply [the continuing violation

exception] absent a showing of compelling circumstances"). If the court finds that the continuing

violation doctrine applies, it "must then consider all relevant actions allegedly taken pursuant to

the employer's discriminatory policy or practice, including those that would otherwise be time

barred." *Banks v. General Motors, LLC*, 81 F.4th 242, 259 (2d Cir. 2023).

---

[11] 29 C.F.R. § 1614.105(a)(2) provides for an extension of the 45-day time limit where "the federal employee did not know and reasonably should not have known that the discriminatory matter or personnel action occurred." *Colvin*, 574 F. App'x at 55–56 (citing 29 C.F.R. § 1614.105(a)). Kramer does not argue that this provision applies.

A plaintiff may only invoke the continuing violation exception when the continuing violation was "clearly asserted both in the EEOC filing and in the complaint." *Miller v. Int'l Tel. & Tel. Corp.*, 755 F.2d 20, 25 (2d Cir. 1985); *see also Fitzgerald v. Henderson*, 251 F.3d 345, 360 (2d Cir. 2001); *Szwalla v. Time Warner Cable LLC*, 670 F. App'x 738, 739 (2d Cir. 2016). The Second Circuit has not specified what it means for a continuing violation to be "clearly asserted" in an EEO complaint, but it has held that an EEO complaint did not "clearly assert" that harassment was part of a continuing violation where it "mention[ed] the harassment only tangentially." *Simmons v. AT & T Corp.*, 182 F.3d 901, 901 (2d Cir. 1999). Courts in this District have held that the "central question" when determining whether an EEO filing "clearly asserts" a continuing violation is whether the filing "gave the agency 'adequate notice' to investigate a continuing violation." *Gerald v. DCV Holdings, Inc.*, No. 17-cv-6525, 2021 WL 2809915, at *8 (E.D.N.Y. July 6, 2021) (citing *Williams v. N.Y.C. Hous. Auth.*, 458 F.3d 67, 70 (2d Cir. 2006) (per curiam) and *Deravin v. Kerik*, 335 F.3d 195, 202 (2d Cir. 2003)).

With respect to discrimination and retaliation claims, "discrete acts" not covered by the "continuing violation" doctrine—"such as termination, failure to promote, denial of transfer, or refusal to hire"—are "easy to identify." *National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 114 (2002). "Each incident of discrimination . . . constitutes a separate actionable unlawful employment practice." *Id.* "Discrete acts of this sort, which fall outside the limitations period, cannot be brought within it, even when undertaken pursuant to a general policy that results in other discrete acts occurring within the limitations period." *Chin v. Port Auth. of N.Y. and N.J.*, 685 F.3d 135, 157 (2d Cir. 2012).

By contrast, the continuing violation doctrine extends the limitations period in hostile work environment claims because so long as "an act contributing to the claim occurs within the

filing period, *the entire time period* of the hostile work environment may be considered by a court for the purposes of determining liability." *Banks*, 81 F.4th at 260 (emphasis added). In other words, "a charge alleging a hostile work environment claim . . . will not be time barred so long as all acts which constitute the claim are part of the same unlawful employment practice *and at least one act falls within the time period.*" *Davis-Garett v. Urban Outfitters, Inc.*, 921 F.3d 30, 42 (2d Cir. 2019) (quoting *Morgan*, 536 U.S. at 122) (emphasis added). Nevertheless, even for hostile work environment claims, "the timely incident must be *sufficiently related* to the prior events so that they can be said to be part of the 'same' hostile work environment." *Sanderson v. N.Y. State Elec. & Gas Corp.*, 560 F. App'x 88, 91 (2d Cir. 2014) (citing *Morgan*, 526 U.S. at 118) (emphasis added); *see also Dziedzic v. State Univ. of New York at Oswego*, 648 F. App'x 125, 127–28 (2d Cir. 2016) ("continuing violation" doctrine did not apply where untimely sexual joke "was made by different co-workers in a different section of the paint department than the [timely] harassment" alleged); *Sooroojballie v. Port Auth. of N.Y. and N.J.*, 816 F. App'x 536, 541–42 (2d Cir. 2020) ("continuing violation" doctrine applied where "non-discrete acts" of "lack of training, evaluations, and discipline" occurred both inside and outside of the statutory period); *James v. Van Blarcum*, 782 F. App'x 83, 84–85 (2d Cir. 2019) ("continuing violation" doctrine applied where similar racial comments were made both inside and outside of the statutory period).

The Second Circuit has not endorsed a specific test for determining whether alleged conduct supporting a hostile work environment claim are "sufficiently related" to timely conduct. District courts have considered "(1) whether the timely and untimely harassment is of a similar nature, (2) whether the same individuals perpetuated the harassment, (3) the frequency and temporal proximity of the acts, and (4) whether the employer took any intervening remedial

action." *Bonterre v. City of New York*, No. 18-cv-745, 2021 WL 4060358, at *3 (S.D.N.Y. Sept. 7, 2021).

In determining whether alleged discriminatory conduct that occurs *after* conduct challenged in an EEO complaint is exhausted, the court must determine whether the subsequent conduct is "reasonably related" to a claim raised in the EEO complaint. *See Atencio*, 2015 WL 7308664, at *5. This requirement is satisfied when: "(1) the claim would fall within the reasonably expected scope of an EEO investigation of the charges of discrimination; (2) it alleges retaliation for filing the EEO charge; or (3) the plaintiff alleges further incidents of discrimination carried out in precisely the same manner alleged in the EEO charge." *Id.* at *6 (citing *Alfano v. Costello*, 294 F.3d 365, 381 (2d Cir. 2002)). This "inquiry requires a fact-intensive analysis" that "focus[es] . . . on the factual allegations made in the EEO charge itself, describing the discriminatory conduct." *Mathirampuzha v. Potter*, 548 F.3d 70, 76 (2d Cir. 2008). "It is the substance of the charge and not its label that controls." *Id.* "The central question is whether the complaint filed with the EEO gave the agency adequate notice to investigate discrimination on both bases." *Id.* at 77. Additionally, with respect to retaliation claims, the Second Circuit has made clear that "no separate or amended EEOC charge encompassing the subsequent retaliation" is required in order to preserve claims regarding alleged retaliation that occurs during the course of an EEOC investigation. *Duplan v. City of New York*, 888 F.3d 612, 622 (2d Cir. 2018) (citing *Owens v. N.Y.C. Hous. Auth.*, 934 F.2d 405, 410–11 (2d Cir. 1991)). Otherwise, "requiring a plaintiff to file a second EEOC charge . . . could have the perverse result of promoting employer retaliation in order to . . . delay the filing of civil actions relating to the underlying acts of discrimination." *Id.* at 622–23.

ii.  *Actions That Occurred Before April 8, 2018 are Time Barred*

The Secretary argues that conduct alleged to have occurred between February 2017 and January 2018 is time-barred because it consists of discrete acts alleged to have taken place more than 45 days before Kramer's May 2018 contact with the EEO and because, "until serving her opposition, Plaintiff [had] never raised a continuing violation claim." (Def.'s Br. at 6–8 (citing Am. Compl. ¶¶ 51–56); Def.'s Reply at 2.) The six allegations at issue are the following:

- In February 2017, Kramer "was falsely accused by Mr. Tarlentino of 'roaming the halls' and not working . . . " (Am. Compl. ¶ 51.)

- In March 2017, "Mr. Tarlentino stated that [Kramer] was 'incapable of listening', 'did not know how to follow orders,' and 'always rambled.'" (Am. Compl. ¶ 52.)

- In April 2017, "Kramer was subjected to false criticisms by Mr. Tarlentino, who claimed that she was 'incapable of having a 0 error rate,' 'had issues,' and 'always rambled.'" (Am. Compl. ¶ 53.)

- In May 2017, "[d]uring a meeting with Ms. Howell, [Kramer] was subjected to sarcastic comments about her deceased ex-husband and her bipolar disorder. Ms. Howell also questioned [Kramer's] fitness to work and made derogatory remarks about her ability to handle stress . . . ." (Am. Compl. ¶ 54.)

- From June 2017 to September 2017, "Mr. Tarlentino persistently made derogatory comments about [Kramer's] capabilities, intelligence, and mental state. He accused her of being 'stupid,' 'untrustworthy,' 'incapable of listening,' and 'unable to follow orders.'" (Am. Compl. ¶ 55.)

- In January 2018, "Ms. Howell insisted that [Kramer] respond to her via Skype immediately after she had received news of her mother's death. Ms. Howell questioned her usage of the Family Medical Leave Act (FMLA) and her ability to work." (Am. Compl. ¶ 56.)

(Def.'s Br. at 6–8 (citing Am. Compl. ¶¶ 51–56).)

Kramer argues that the conduct alleged to have occurred between February 2017 and January 2018 is timely under the continuing violation doctrine because of the "continuous nature of the hostile work environment [Kramer] endured" and because the conduct alleged during the

limitations period concerned the same hostile work environment Kramer experienced between February 2017 and January 2018—meaning that at least one act fell within the limitations period. (Pl.'s Opp'n at 6 (citing Am. Compl. ¶¶ 17, 21, 22, 26, 39, 43, 57).)

The Amended Complaint does not use the term "continuing violation," but alleges a hostile work environment and that Kramer was subjected to "[c]ontinuous [h]arassment" and other "continu[ing]" forms of discrimination. (Am. Compl. ¶¶ 12, 36, 46–48, 55, 58.) Accordingly, the Secretary is incorrect in arguing that Kramer did not assert a continuing violation until her opposition brief. (*See* Def.'s Reply at 2.) Nevertheless, I need not decide whether the Amended Complaint plausibly alleges that all of the conduct challenged in Kramer's disparate treatment, failure-to-accommodate, and hostile work environment claims concern continuing violations because, for the reasons discussed below, the Amended Complaint fails to allege a qualifying disability. *See supra* Discussion § IV.b.i–iii. Thus, for the purpose of resolving Defendant's Motion, I only consider whether the conduct challenged in Kramer's retaliation claim is timely. Conducting that analysis, I conclude that because Kramer failed to assert a continuing violation in either of her EEO complaints, any conduct alleged to have occurred before April 8, 2018 is time barred.

Kramer's first EEO complaint was filed on August 1, 2018 and addressed several discrete actions related to the IRS' failure to promote her to an HR position for which she had applied. *See* ECF No. 41-2; *Morgan*, 536 U.S. at 114 (holding that failure to promote is a discrete action that does not fall within the continuing violation doctrine). Specifically, Kramer's first complaint, as amended on October 24, 2018, alleges three incidents:

- Kramer's manager chose not to hire her for a Human Resource Specialist (HRS) position on the pretext that she was not "developed enough" even though her qualifications "exceeded the requirements necessary" and three individuals "were hired with no prior experience . . . and are still being trained in the HRS position." (ECF No. 41-2 at 2.)

26

- Kramer's manger rated her lower on an annual rating to "validate the decision to not choose [her] for the HRS position" and then accused Kramer of not being professional in what she alleges "was rather a reference to my disability." (*Id.*)

- The IRS discriminated and retaliated against Kramer for her filing an EEO complaint concerning an October 2, 2018 incident in which management "scrutinized and criticized her Career Learning Plan (CLP)." (ECF No. 41-3)

(ECF No. 41-3 (EEO grant of Kramer's amendment to August 1, 2018 EEO complaint).)

Kramer's narrative description of the events described in the EEO complaint includes that the

following allegation: "Ever since Mr. Tarlentino officially became my immediate supervisor, I

have felt that I have had my work reviewed more intently due to my disability." (ECF No. 41-2

at 2.)

All three incidents described in the August 1, 2018 EEO complaint concern alleged

disparate treatment, and the alleged scrutiny and critique of Kramer's Career Learning Plan also

concerns alleged retaliation. Moreover, the three discrete incidents in the EEO complaint "are

not described as part of a continuing violation." *Carmellino v. Dist. 20 of N.Y.C. Dep't of Educ.*,

No. 03-cv-5942, 2004 WL 736988, at *13 (S.D.N.Y. Apr. 6, 2004). The EEO complaint states

that Tarlentino reviewed Kramer's work more intently after becoming her supervisor, but fails to

provide any detail and is therefore a "tangential[]" statement that fails to assert a continuing

hostile work environment. *Simmons*, 182 F.3d at 901; *see also Kleinman v. Fashion Inst. of

Tech.*, No. 16-cv-4348, 2017 WL 3016940, at *9 (S.D.N.Y. July 14, 2017) (finding that a

"conclusory incantation[]" that "[s]ince I was granted tenure, I have been consistently treated

with hostility, ostracized, and subjected to abuse" did not assert a continuing violation).

Therefore, the August 1, 2018 EEO complaint did not give "the agency 'adequate notice' to

investigate a continuing violation" in the form of a retaliatory hostile work environment. *Gerald*,

2021 WL 2809915, at *8. Further supporting this lack of notice of a continuing violation, an

27

EEO counselor completed a May 23, 2018 EEO intake form, which indicates that Kramer reported a personnel action and other managerial decisions, but the counselor did not check a box for "harassment." (ECF No. 41-1.)

Kramer filed a second EEO complaint on July 30, 2019, alleging the following four incidents:

- In what the EEO complaint describes as the "1st incident," it alleges that on May 9, 2019, Kramer's manager harassed her at a meeting, including by accusing Kramer of "rambling" and interrupting him. (ECF No. 41-6 at 2.)[12]

- In a June 10, 2019 performance appraisal, Kramer was subjected to similar conduct, treated as a "troubled employee," and subjected to "derogatory statements referring to [her] disability." (*Id.*)

- Kramer was not selected for an HRS position. (ECF No. 41-7 (granting amendment to complaint).)

- On October 18, 2019, management scrutinized an email response that Kramer sent to a customer. (ECF No. 41-8 (granting second amendment to complaint).)

Kramer also indicated that the four incidents were part of a course of retaliation by stating in her narrative description: "Ever since my EEO complaint only my fellow peers in my group can meet one on one with Mr. Talentino" and "[s]ince my submitting an EEO complaint, I have been singled out and treated different than my peers." (ECF No. 41-6 at 2.)

Accordingly, the second EEO Complaint placed Kramer's employer on notice that she was asserting that she experienced a continuing retaliatory hostile work environment after making the first EEO complaint on August 1, 2018. (*See id.*) Supporting this conclusion, the

---

[12] The record also contains an intake form completed by an EEO counselor prior to Kramer's filing of the second EEO complaint on which the counselor checked boxes for "hostile or physical conduct," "bullying," "ridicule or mockery," "sabotaging work," and "derogatory comments." (*See* ECF No. 41-4 at 1–2.) However, the only incident alleged on the intake form is the May 9, 2019 incident in which Tarlentino accused Kramer of rambling and interrupting him. (*Id.*)

EEO intake form completed by an EEO counselor and dated June 3, 2019, also identified Kramer's claim as a hostile work environment claim. *See* ECF No. 41-4 at 1–2; *Gerald*, 2021 WL 2809915, at *8 (holding that adequate notice existed where even though a plaintiff did not check a box on the EEOC charge to indicate a "continuing violation," he specified dates that included incidents outside the statutory limitations period and described the offending conduct as "continuous," leading the EEOC determination letter to note that the allegations concerned a "hostile work environment").

However, the second EEO complaint does not describe any incidents of harassment that took place *before* the "1st incident" on May 9, 2019 or provide any other indication that Kramer experienced a retaliatory hostile work environment before May 9, 2019. (*See* ECF No. 41-6 at 2.)[13] The Amended Complaint alleges that in February 2017 Kramer engaged in protected activity by meeting with Howell and Tarlentino regarding their alleged discriminatory conduct and that, afterwards, she experienced at least five incidents of harassment between February 2017 and September 2017 and one in January 2018. (Am. Compl. ¶¶ 11, 51–56.) The second EEO complaint does not describe any of these incidents or even suggest that any protected activity or alleged retaliatory conduct took place prior to May 9, 2019. Accordingly, the July 30, 2019 EEO complaint did not provide "adequate notice" to Kramer's employer to investigate any of these incidents as a continuing violation relating to Kramer's report that she experienced retaliation *after* making her first EEO complaint on August 1, 2018. *Gerald*, 2021 WL 2809915, at *8; *Kleinman*, 2017 WL 3016940, at *9 (holding that an EEOC charge that alleged

---

[13] Some courts have held that failure to check a continuing violation box on an EEO complaint, while not determinative, is a factor to consider in determining whether the EEO complaint asserted a continuing violation. *See, e.g.*, *Gerald*, 2021 WL 2809915, at *8. Here, the second EEO complaint did not have a "continuing violation" box for Kramer to check. (*See* ECF No. 41-6.)

discrimination began in "December 2013" and ended in "August 2015," "affirmatively informed the EEOC" that the defendant had stopped discriminating against plaintiff in 2015 and did not "clearly assert" a continuing violation theory for allegations after that date).

Accordingly, the Amended Complaint's allegations of conduct that occurred before April 8, 2018 are time barred for purposes of Kramer's retaliation claims.

### iii. *Other Allegations of Conduct not Raised in the EEO Process*

The Secretary contends that Kramer failed to exhaust seven allegations concerning conduct that occurred either while her EEO complaints were pending or *after* the conduct described in the July 30, 2019 EEO complaint. According to the Secretary, the agency's "investigation into the seven discrete events that occurred on specific dates would not have ultimately uncovered claims related to ongoing excessive scrutiny, derogatory remarks, or lying on a resume subsequent to the filing of either EEO charge." (Def.'s Br. at 12–13.) Because the Amended Complaint fails to allege a qualifying disability, I need not address this issue with respect to Kramer's disparate treatment, failure-to-accommodate, and hostile work environment claims. *See supra* Discussion § IV.b.i–iii. However, I must determine whether the allegations challenged by the Secretary as barred for failure to exhaust may be considered with respect to Kramer's retaliation claims.

The Secretary's exhaustion argument pertains to the following allegations relating to conduct that occurred after the filing of the first EEO complaint:

- From April 2018 to April 2019, "[Kramer's] work was excessively scrutinized by Ms. Howell, Mr. Tarlentino, Ms. Tavano, and Ms. Barbeau. They made unwarranted accusations and exaggerated any errors made by Ms. Kramer, singling her out . . . ." (Am. Compl. ¶ 57.)

- From May 2019 to September 2019, "Ms. Howell continued to question and criticize [Kramer's] work, despite receiving numerous customer service congratulations and positive feedback." (*Id.* ¶ 58.)

- From October 2019 to November 2019, "Ms. Howell made derogatory remarks during an operation meeting, implying that [Kramer] was not capable of working independently." (*Id.* ¶ 59.)

- In December 2019, "[Kramer] was accused by Ms. Howell of lying on her resume and being untrustworthy, despite the lack of evidence supporting these claims." (*Id.* ¶ 60.)

- From January 2020 to February 2020, "[Kramer] disagreed with the appraisal provided by Mr. Tarlentino, stating that it did not accurately reflect her performance. Despite expressing her concerns and willingness to file a dispute, her feedback was disregarded and her appraisal remained unchanged." (*Id.* ¶ 61.)

- In April 2020, "Ms. Tavano accused [Kramer] of lying during an interview, alleging that she had lied on her resume. Despite providing evidence to refute these accusations, [Kramer's] credibility was questioned and her character was unfairly attacked." (*Id.* ¶ 62.)

(Def.'s Br. at 7, 12–13 (arguing that Kramer failed to exhaust the allegations recited above).)[14] I

consider whether conduct described in these allegations is "reasonably related" to the conduct

described in Kramer's EEO complaints based on whether: "(1) the claim would fall within the

reasonably expected scope of an EEO investigation of the charges of discrimination; (2) it

alleges retaliation for filing the EEO charge; or (3) the plaintiff alleges further incidents of

discrimination carried out in precisely the same manner alleged in the EEO charge." *Atencio*,

2015 WL 7308664, at *6 (citing *Alfano*, 294 F.3d at 381).[15] As previously noted, with respect to

---

[14] The Secretary also challenges again the allegations from before the filing of Kramer's EEO complaints. However, I need not consider these allegations here because they are time-barred for the reasons discussed above. *See supra* Discussion § IV.b.i.2.

[15] Judge Tiscione recommended in his R&R concerning Defendants' motion to dismiss the original Complaint, that "allegations involving conduct subsequent to [Kramer's] filing an EEOC charge can be read to allege retaliation and therefore fit under the retaliation conceptualization of the reasonably related exception." (R&R at 9–10.) Some of the allegations the Secretary challenges are new allegations that appear for the first time in Kramer's Amended Complaint, (Def.'s Br. at 14).

this second prong, the Second Circuit has established that where a "plaintiff has already filed an EEOC charge," courts "assume[] that the exhaustion requirement is also met for *a subsequent claim alleging retaliation* by an employer against [that] employee *for filing an EEOC charge*." *Duplan*, 888 F.3d, at 622 (emphasis added); *see also Olivieri v. Stifel, Nicolaus & Co., Inc.*, 112 F.4th 74, 92 (2d Cir. 2024) ("This Court has recognized that retaliation for reporting discrimination is reasonably related to the underlying discrimination, such that a plaintiff who exhausts a discrimination claim with the EEOC may also pursue a claim for retaliation.").

Contrary to the Secretary's argument, Kramer's second EEO complaint challenged retaliation and a hostile work environment as recognized by the EEO counselor who completed the June 3, 2019 intake form relating to that complaint. (*See* ECF No. 41-6 at 2 (complaining that "[e]ver since my EEO complaint only my fellow peers in my group can meet one on one with Mr. Talentino" and "[s]ince my submitting an EEO complaint, I have been singled out and treated different than my peers");  ECF No. 41-4 at 1–2 (noting that Kramer's claim concerned a "hostile work environment").  The conduct at issue in the seven allegations challenged by the Secretary is potentially part of the same retaliatory hostile work environment of which Kramer complained in her second EEO complaint. Accordingly, the alleged conduct that the Secretary challenges for failure to exhaust is reasonably related to the conduct challenged in Kramer's August 1, 2018 and July 30, 2019 EEO complaints and is therefore properly considered in resolving the Secretary's motion to dismiss the retaliation claims. *Duplan*, 888 F.3d at 622; *Olivieri*, 112 F.4th at 92.[16]

---

[16] In *Duplan*, the Second Circuit made clear that the reasonably related exception does not apply to retaliatory conduct that is abandoned by failing to file a timely lawsuit with respect to those claims. *Duplan*, 888 F.3d at 624. Here, the Secretary does not argue that this applies to any of the allegations of retaliation.

b.  Failure to State a Claim

### i.  *Disparate Treatment Discrimination*

The Secretary argues that the Amended Complaint does not allege any plausible disparate treatment claim because it fails to allege a qualifying disability and adverse employment actions that can support a disparate treatment claim.[17] For the reasons set forth below, the disparate treatment claim is dismissed because the Amended Complaint fails to plausibly allege that Kramer was disabled within the meaning of the Rehabilitation Act.

To plead a Rehabilitation Act disparate treatment claim, a plaintiff must allege that: (1) the employer is subject to the Rehabilitation Act; (2) the plaintiff is disabled within the meaning of the Rehabilitation Act, or perceived to be so by the employer; (3) the plaintiff was otherwise qualified to perform the essential functions of the job with or without reasonable accommodation; (4) the plaintiff suffered an adverse employment action; and (5) the adverse action was imposed because of the plaintiff's disability. *Pattanayak v. Mastercard Inc.*, No. 22-1411, 2023 WL 2358826, at *3 (2d Cir. Mar. 6, 2023) (ADA claims (citing *Davis*, 804 F.3d at 235)); *see also Sharikov*, 103 F.4th at 166 (ADA claims); *Veldran*, 839 F. App'x at 578–79 (Rehabilitation Act claims). The fifth element requires a plausible allegation that "discrimination

---

[17] The Secretary also argues in a footnote that the Amended Complaint fails to allege that Kramer's disability was the but-for cause of many of the alleged decisions and actions of her supervisors and colleagues. (*See* Def.'s Br. at 15 n.8.) Courts are "under no obligation" to consider arguments that "appear only in footnotes" because they are "not properly raised." *Weslowski v. Zugibe*, 96 F. Supp. 3d 308, 314 (S.D.N.Y.), *aff'd*, 626 F. App'x 20 (2d Cir. 2015); *see also Breuninger v. Williams*, No. 20-cv-7033, 2023 WL 4211030, at *5 n.3 (S.D.N.Y. June 27, 2023) (declining to consider an argument raised only in a footnote); *Sec. & Exch. Comm'n v. Allaire*, No. 03-cv-4087, 2019 WL 6114484, at *3 n.1 (S.D.N.Y. Nov. 18, 2019) ("An argument mentioned only in a footnote is not adequately raised and need not be considered."), *aff'd sub nom., Sec. & Exch. Comm'n v. Romeril*, 15 F.4th 166 (2d Cir. 2021). I do not resolve whether to consider this argument, however, because the disparate treatment claim is dismissed on a separate basis.

was the but-for cause of any adverse employment action." *Natofsky*, 921 F.3d at 348 (ADA claims); *Witcher v. N.Y.C. Dep't of Educ.*, No. 23-465, 2024 WL 3220264, at *1 (2d Cir. June 28, 2024) (ADA claims); *see also Porter*, 92 F.4th at 148 ("The 'on the basis of' language in the ADA imposes a "but-for" standard of causation.") (Rehabilitation Act and ADA claims).

An "adverse employment action" in the context of a Rehabilitation Act disparate treatment claim is an action that is "materially adverse with respect to the terms and conditions of employment." *Davis*, 804 F.3d at 235 (ADA claims). Under the Supreme Court's recent decision in *Muldrow v. City of St. Louis*, 601 U.S. 346 (2024), a plaintiff bringing a Title VII discrimination claim "does not have to show . . . that the harm incurred was significant[,] serious, or substantial, or any similar adjective suggesting that the disadvantage to the employee must exceed a heightened bar." *Id.* at 355. Rather, the plaintiff must only show "some harm respecting an identifiable term or condition of employment"—in other words, the plaintiff must have been "left [] worse off" but not necessarily "significantly so." *Id.* at 354–55, 359. Although the Second Circuit has not addressed whether the adverse action standard set forth in *Muldrow* applies to Rehabilitation Act discrimination claims, district courts have applied the *Muldrow* standard to such claims. *See, e.g.*, *Castagna v. Driscoll*, No. 1:22-cv-03503, 2025 WL 2402615, at *5 (S.D.N.Y. Aug. 19, 2025).

### 1.  *Qualifying Disability*

The Secretary argues that the Amended Complaint has failed to allege that Kramer had a qualifying disability within the meaning of the Rehabilitation Act because it does not allege facts indicating that Kramer's bipolar disorder or mobility limitations substantially affected a major life activity. (Def.'s Br. at 15–16.) In opposition, Kramer responds that her bipolar disorder and

mobility limitations "affect her major life activities, including but not limited to concentrating, thinking, and working." (Pl.'s Opp'n at 11.)

A person has a "disability" under the Rehabilitation Act, if she has "a physical or mental impairment that *substantially limits* one or more of [her] major life activities," (b) has "a record of such an impairment," or (c) is "regarded as having such an impairment." *Veldran*, 839 F. App'x at 579 (emphasis in original) (quoting 42 U.S.C. § 12102(1); 29 U.S.C. § 705(9)(B)).[18] Major life activities include, among other things, "caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." 42 U.S.C. § 12102(2) ("Section 1202"). According to the findings and purposes of the ADA Amendments Act of 2008—with which Section 1202 is to be interpreted consistently, 42 U.S.C. § 12102(4)(B)— whether an activity is a *major* life activity should not be "interpreted strictly to create a demanding standard for disability" and is not determined by reference to whether it restricts the individual from doing activities that are of central importance to most people's daily lives." ADA Amendments Act of 2008, Pub. L 110-325, sec. 1201 Note, § 2(b)(4), 122 Stat. 3553 (Sept. 25, 2008). Thus, "whether an individual's impairment is a disability under the ADA should not demand extensive analysis." ADA Amendments Act of 2008, sec. 1201 Note, § 2(b)(5).

---

[18] A plaintiff can also plead a disability under the ADA and the Rehabilitation Act by alleging "a record of such an impairment," or that the plaintiff was "regarded as having such an impairment." *Veldran*, 839 F. App'x at 579 (citing 42 U.S.C. § 12102(1) and 29 U.S.C. § 705(9)(B)). Kramer does not argue that the Amended Complaint pleads a disability through either of these theories. (*See* Pl.'s Opp'n at 10–12.) More critically, the Amended Complaint does not allege facts that plausibly suggest that the Secretary had a record that Kramer had a physical or mental impairment that substantially limited one or more of her major life activities, or that the Secretary regarded Kramer as having such an impairment. (*See* Am. Compl.)

Although these findings and purposes indicate that whether an impairment "substantially limits major life activities is to be construed broadly," *Morey v. Windsong Radiology Grp., P.C.*, 794 F. App'x 30, 32 (2d Cir. 2019), "not every impairment that affects an individual's major life activities is a substantially limiting impairment," *B.C. v. Mount Vernon Sch. Dist.*, 837 F.3d 152, 160 (2d Cir. 2016). To determine whether an impairment "substantially limits" a major life activity, courts therefore consider, among other factors, "the nature and severity of the impairment; its duration or expected duration; and the existence of any actual or expected permanent or long term impact." *Capobianco v. City of New York*, 422 F.3d 47, 57 (2d Cir. 2005) (ADA); *see also Ibela v. Allied Universal*, No. 21-1995-cv, 2022 WL 1418886, at *1 (2d Cir. May 5, 2022) (summary order) (ADA) (same). "A medical diagnosis, without more, establishes only that a plaintiff suffered an impairment, and not that his ability was substantially limited by that impairment." *Robles v. Medisys Health Network, Inc.*, No. 19-cv-6651, 2020 WL 3403191, at *6 (E.D.N.Y. June 19, 2020).

A non-binding EEOC regulation provides that "it should easily be concluded that . . . bipolar disorder . . . substantially limit[s] brain function . . . [and] may substantially limit additional major life activities." 28 C.F.R. § 1630.2(j)(3)(iii).[19] Notwithstanding this regulation

---

[19] The Second Circuit has previously found EEOC regulations instructive when interpreting Section 1202. *See, e.g.*, *Sharikov*, 103 F.4th at 168. It has not had opportunity to interpret Section 1202 since the Supreme Court held in *Loper Bright Enters. v. Raimondo*, 603 U.S. 369 (2024), that courts must "independently interpret [] statute[s] and effectuate the will of Congress" rather than deferring to agency interpretations. *Id.* at 395; *see also State v. Bessent*, No. 24-1499-cv, __ F.4th __, 2025 WL 2327237, at *9 (2d Cir. Aug. 13, 2025) ("Regardless of whether a statute is deemed to be ambiguous or unambiguous, interpretation of the statute is a question of law, and accordingly, it is the court, and not the administrative agency, that determines its meaning.") Nonetheless, because *Loper Bright* was not meant to "call into question prior cases" deferring to agency interpretations of statutes and because such cases "are still subject to statutory stare decisis despite [the law's] change in interpretative methodology," *Loper Bright*, 603 U.S. at 412,

however, as set out above, "a diagnosis alone is insufficient to establish disability." *Ibela*, 2022 WL 1418886, at *2 ("A diagnosis alone is insufficient to establish disability under the [ADA]." (citing *Toyota Motor Mfg., Kentucky, Inc. v. Williams*, 534 U.S 184, 198 (2002), *overturned on other grounds by ADA Amendments Act of 2008*, Pub. L 110-325, 122 Stat. 3553 (2008)). Accordingly, when resolving a motion to dismiss a disability discrimination claim, courts in this Circuit determine whether the complaint pleads specific facts that plausibly allege that the plaintiff's bipolar disorder substantially impairs a major life activity as required to plead a disability. *See, e.g.*, *id*. at *2; *Collins v. Giving Back Fund*, No. 18-cv-8812, 2019 WL 3564578, at *12–13 (S.D.N.Y. Aug. 6, 2019); *Robles*, 2020 WL 3403191, at *7.[20]

---

the Second Circuit's prior cases interpreting Section 1202 in light of EEOC regulations remains binding on the analysis here.

Moreover, even if that were not the case, "an agency's interpretation of a statute, while not binding" when premised on an agency's expertise may still have "particular power to persuade." *Bessent*, 2025 WL 2327237, at * 10 (citing *Loper Bright*, 603 U.S. at 402). Here, the EEOC has expertise in assessing whether impairments rise to the level of a disability and its regulations are persuasive because they are consistent with the ADA Amendments Act of 2008. *Compare* 29 C.F.R. § 1630.2(j)(i) (indicating that the requirement that an impairment substantially limit major life activities is not a "demanding" standard, and courts shall construe the term "substantially limits . . . broadly in favor of expansive coverage"), *with* ADA Amendments Act of 2008, Pub. L 110-325, sec. 1201 Note, § 2(b)(4), 122 Stat. 3553 (Sept. 25, 2008).

[20] An EEOC regulation, which is persuasive even if non-binding, *see supra* note 19, advises that an "individualized assessment of some types of impairments will, in virtually all cases, result in a determination" that the plaintiff has a qualified disability. 29 C.F.R. § 1630.2(j)(3)(ii). Nevertheless, an individualized assessment still must take place. *Alston v. Park Pleasant, Inc.*, 679 F. App'x 169, 172 (3d Cir. 2017) ("Although [29 C.F.R. § 1630.2(j)(3)(ii)] makes the individualized assessment 'particularly simple and straightforward' for diseases like cancer, . . . an individualized assessment must still take place. To undertake that individualized assessment, courts have required some evidence of the plaintiff's substantial limitation—even when the limitation seems self-evident in context." (citing *Albertson's, Inc. v. Kirkingburg*, 527 U.S. 555, 566 (1999))).

In *Ibela v. Allied Universal*, the Second Circuit held that a complaint "did not sufficiently allege that [the plaintiff] suffered from a disability within the meaning of the ADA" where it alleged that the plaintiff had bipolar disorder but "did not allege any facts showing that his bipolar disorder impacted, let alone substantially limited, a major life activity." 2022 WL 1418886, at *2. Similarly, in *Collins v. Giving Back Fund*, the district court dismissed a Rehabilitation Act disparate treatment claim where the complaint alleged that the plaintiff had "bipolar disorder and post-traumatic stress disorder" but did "not plead facts from which the Court [could] infer" that the plaintiff's bipolar disorder "substantially affected her ability to perform any major life activities." 2019 WL 3564578, at *1, 13. The court in *Collins* recognized that bipolar disorder is "listed as [an] example[] of [an] 'impairment[]' that ha[s] the potential to 'substantially limit' a major life activity in the relevant Equal Employment Opportunity Commission regulations." *Id.* at *12 (citing 29 C.F.R. § 1630.2(j)(3)(iii)). It nevertheless found that the complaint failed to sufficiently plead a disability because it did "not plead[] how [the plaintiff's] bipolar and post-traumatic stress disorders affect[ed] her in any major life activity," did not provide "any allegations tending to show that these conditions had a significant impact on her ability . . . to care for herself, perform manual tasks, walk, see, hear, learn, speak or breathe," or "plead facts tending to show that her condition substantially impaired her ability to work." *Id.* at *13.

By contrast, in *Robles v. Medisys Health Network, Inc.*, another judge of this Court found that a complaint alleged that a plaintiff's diagnosed bipolar disorder substantially impaired one or more major life activities where the complaint alleged that: (1) the plaintiff's bipolar disorder symptoms "were serious enough to require a week-long hospitalization" at the time he was diagnosed, (2) the plaintiff was hospitalized again on two more occasions, (3) at one point, the

38

plaintiff "had a mental breakdown and was found lying in the street" due to his bipolar disorder, and (4) the symptoms experienced by the plaintiff "resulted in his being unable to concentrate and having extreme difficulties breathing." 2020 WL 3403191, at *7; *see also Durr v. Slator*, 558 F. Supp. 3d 1, 29 (N.D.N.Y. 2021) ("By alleging that he becomes significantly mentally disturbed when his bipolar disorder is left untreated, Plaintiff has sufficiently pled a qualifying disability under the ADA.").

Here, the Amended Complaint alleges that Kramer has a "bi-polar condition" and that the "discrimination and retaliation against Plaintiff . . . exacerbated her pre-existing conditions, leading to escalated episodes of syncope and behavioral issues related to her bipolar disorder." (Am. Compl. ¶¶ 33, 46.) The Amended Complaint does not allege that Kramer's bipolar disorder impairs any life activities or offer any allegations as to *how* it does so. (*See generally id.*)[21]

In opposition, Kramer argues that her bipolar disorder and mobility limitations "affect her major life activities, including but not limited to concentrating, thinking, and working." (Pl.'s Opp'n at 11.) Despite making this argument in briefing, the Amended Complaint contains no allegations that either Kramer's bipolar disorder or mobility limitations affect her concentration, thinking, or working. (*See generally* Am. Compl.) As in *Ibela* and *Collins*, the Amended Complaint fails to offer any factual allegations about how Kramer's bipolar disorder affects any of her life activities, let alone about how it *substantially limits* a major life activity. *Ibela*, 2022 WL 1418886, at *2; *Collins*, 2019 WL 3564578, at *12–13. Similarly, although the Amended Complaint alleges that Kramer has a "disability, which includes mobility limitations" and

---

[21] The Amended Complaint alleges that a May 9, 2019 incident in which Tarlentino subjected Kramer to harassment "led Plaintiff to seek medical attention and take a leave of absence for five work days," but does not allege that Kramer's bipolar disorder caused the need for medical attention or a leave of absence. (Am. Compl. ¶ 37.)

"physical limitations and the associated pain," (Am. Compl. ¶¶ 9, 28),[22] it does not provide any additional allegations about these "physical" and "mobility limitations." (*See id.*) Without more, the Amended Complaint fails to allege that Kramer's bipolar disorder or mobility limitations *substantially* limit a major life activity as required to plead a disability under the Rehabilitation Act. *See Veldran*, 839 F. App'x at 579 (citing 42 U.S.C. § 12102(1)); 29 U.S.C. § 705(9)(B)).

Because the Amended Complaint fails to allege that Kramer has a qualifying disability, the disparate treatment claim is dismissed without prejudice under Rule 12(b)(6). As discussed below, I will provide Kramer leave to file a second amended complaint since it appears likely that Kramer can allege a qualifying disability with amendment. *See* Rule 15(a)(2), Fed. R. Civ. P. (setting forth a lenient standard under which "[t]he court should freely give leave [to amend] when justice so requires"). Because the failure to plausibly plead a disability is fatal to the disparate treatment claim, I do not reach the question of whether the Amended Complaint's allegations concerning offensive comments, gestures, criticisms, or heightened scrutiny of Kramer by her supervisors plausibly allege an adverse employment action that can support a disparate treatment claim. (Def.'s Br. at 16.) Nor do I reach the question of whether the Amended Complaint plausibly alleges that Kramer's disability was the but-for cause of any adverse action. (*See* Def.'s Br. at 15 n.8.)

---

[22] The allegation that Kramer has a "disability" is itself a conclusory allegation. *Melendez*, 50 F.4th at 307. Similarly, the Amended Complaint also alleges that "Plaintiff is an individual with a disability within the meaning of the Americans with Disabilities Act (ADA), 42 U.S.C. § 12102(1), and Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794(a)." (Am. Compl. ¶ 67.) I do not consider this allegation because it is a bare legal conclusion, not a factual allegation. *Melendez*, 50 F.4th at 307.

### ii.   *Failure to Accommodate*

The Secretary also moves to dismiss Kramer's Rehabilitation Act failure-to-accommodate claim, arguing that the Amended Complaint fails to allege a qualifying disability, any way in which Kramer could not perform the essential functions of her job, and the accommodation Kramer sought that would allow her to perform the essential functions of her job. (*Id.* at 17–18.) In opposition, Kramer argues that two paragraphs in the Amended Complaint "explicitly state[] that the IRS failed to provide the requested accommodations or engage in an interactive process to determine suitable accommodations, directly impacting her ability to perform her duties and exacerbating her condition." (Pl.'s Opp'n at 14–15 (citing Am. Compl. ¶¶ 83–84).)

To plead a claim under the Rehabilitation Act based on an employer's failure to accommodate a disability, "a plaintiff must demonstrate that (1) the plaintiff is a person with a disability under the meaning of the statute in question; (2) an employer covered by the statute had notice of his disability; (3) with reasonable accommodation, plaintiff could perform the essential functions of the job at issue; and (4) the employer has refused to make such accommodations." *Costabile v. N.Y.C. Health & Hosps. Corp.*, 951 F.3d 77, 81 (2d Cir. 2020). The complaint must also allege "the *connections* between [(1)] the failure to accommodate [the plaintiff's] disability, [(2)] the performance deficiencies, and [(3)] the adverse employment action." *Knope*, 2021 WL 5183536, at *2 (emphasis added).

For the reasons previously discussed, the Amended Complaint fails to allege a qualifying disability. *See supra* Discussion Section IV.b.i.1. Thus, the failure-to-accommodate claim is dismissed for this reason alone. *Costabile*, 951 F.3d at 81; Fed. R. Civ. P. 12(b)(6).

41

Even if the Amended Complaint does allege a disability, however, it would still fail to state a claim for failure-to-accommodate for two reasons. First, it fails to provide any factual allegations plausibly showing that Kramer could perform the essential functions of the job at issue only with an accommodation. *See Magnotti v. Crossroads Healthcare Mgmt., LLC*, 126 F. Supp. 3d 301, 313 (E.D.N.Y. 2015) (dismissing failure to accommodate claim where there were "no allegations anywhere in the Amended Complaint that plaintiff required a reasonable accommodation in order to perform his job, let alone asked defendants for such an accommodation"). In opposition, Kramer argues that "[d]espite her disability, the Plaintiff has demonstrated exceptional performance in her role, indicating that with appropriate accommodations, she could continue performing her job at a high level (Amended Complaint, ¶23, ¶40, ¶41, ¶43)." (Pl.'s Opp'n at 14.) None of the paragraphs of the Amended Complaint to which Kramer cites, however, allege that Kramer required an accommodation to perform the essential functions of her job. By contrast, these paragraphs allege that Kramer exhibited superior performance in her role as follows:

- "23. Plaintiff's performance far exceeded that of her colleagues, as evidenced by the significantly higher volume of work she handled, the quality of her responses, and her willingness to assist others. However, the agency and its management deliberately undermined her achievements and created obstacles to her professional growth and advancement." (Am. Compl. ¶ 23.)

- "40. Plaintiff's performance consistently exceeded expectations, as she worked diligently, responded to thousands of customer service tickets, and provided guidance to colleagues. Despite her exceptional work ethic and contributions, management intentionally sought to diminish her achievements and portray her as inferior to other applicants." (*Id.* ¶ 40.)

- "41. Additionally, Plaintiff's superior performance and qualifications were evident from her inclusion in the advanced pay setting and qualification classes, which were not extended to many of the new hires and even Ms. Rebecca Bernstein, who were placed in basic pay setting and qualification classes." (*Id.* ¶ 41.)

- "43. Furthermore, Mr. Tarlentino and Ms. Howell selectively scrutinized Plaintiff's emails, despite receiving excellent customer service acknowledgments from customers who expressed satisfaction with her responses. Their attempts to discredit Plaintiff's work and skills were unfounded and solely aimed at retaliating against her protected activity." (*Id.* ¶ 43.)

Second, the Amended Complaint does not allege that Kramer ever requested an accommodation or that the Secretary refused to grant Kramer any requested accommodation. *See Thomson v. Odyssey House*, 652 F. App'x 44, 46–47 (2d Cir. 2016) (dismissing a reasonable accommodation claim because the complaint did "not allege when, if ever," the plaintiff "sought any kind of accommodation"). Kramer relies on conclusory paragraphs in the Amended Complaint to argue that it adequately alleges that she requested specific accommodations for her disability. (*See* Pl.'s Opp'n at 14–15 (citing Am. Compl. ¶¶ 83–84); Am. Compl. ¶ 83 ("Despite Plaintiff's requests, the agency failed to provide the requested reasonable accommodations or engage in an interactive process to determine appropriate accommodations."); *id.* ¶ 84 ("The agency's failure to provide reasonable accommodations has resulted in Plaintiff's inability to perform her job duties effectively and has caused her undue hardship and harm."); *see also id.* ¶ 82 ("Plaintiff, as an individual with a disability, requested reasonable accommodations from the agency to enable her to perform the essential functions of her job.").) It is well established that on a motion to dismiss, a court is "not required to credit conclusory allegations or legal conclusions couched as factual allegations." *Melendez*, 50 F.4th at 307; *see also Iqbal*, 556 U.S. at 678 ("A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do."). Because the Amended Complaint offers only "naked assertions" that the Secretary refused to grant Kramer a reasonable accommodation, and those assertions are "devoid of further factual enhancement," the Amended Complaint fails to state a Rehabilitation Act failure-to-accommodate claim. *Iqbal*, 556 U.S. at 678. Nonetheless, for the reasons discussed

below, the Court grants Kramer leave to amend the failure to accommodate claim. *See infra* Discussion § IV.c.

### iii.  Hostile Work Environment

The Secretary argues for dismissal of Kramer's hostile work environment claims on five grounds: (1) the Amended Complaint fails to plead a disability; (2) the challenged conduct is time-barred and/or not exhausted and therefore may not be considered in evaluating the hostile work environment claim; (3) the allegations that could support this claim are sporadic in nature; (4) for many of these allegations, there is no plausible causal connection between the alleged conduct and Kramer's alleged disability; and (5) there are no allegations that the alleged conduct altered the conditions of Kramer's employment. (Def.s Br. at 23–25.)

As with Kramer's disparate treatment and failure-to-accommodate claims, the Amended Complaint's failure to plead a plausible disability is fatal to the hostile work environment claim. To bring a hostile work environment claim under the Rehabilitation Act, a plaintiff must allege that (1) the plaintiff was subject to workplace harassment that was "sufficiently severe or pervasive to alter the conditions of his employment and create an abusive working environment," and (2) "that a specific basis exists for imputing the objectionable conduct to the employer." *Fox*, 918 F.3d at 74; *Knope*, 2021 WL 5183536, at *4 (applying this standard to Rehabilitation Act claims). The employee must also plausibly allege that their "employer created a hostile environment *because of*" the employee's disability. *Knope*, 2021 WL 5183536, at *4 (citing *Brown v. Henderson*, 257 F.3d 246, 252 (2d Cir. 2001)) (emphasis added). This requirement is not met because the Amended Complaint fails to allege a qualifying disability. *See supra* Discussion Section IV.b.i.1. Accordingly, Kramer's hostile work environment claim is also dismissed without prejudice and with leave to amend for failure to state a claim, and I do not

44

reach the Secretary's other arguments for dismissal. *Knope*, 2021 WL 5183536, at *4; Fed. R. Civ. P. 12(b)(6).

### iv.  Retaliation

The Secretary argues that the Amended Complaint fails to state a Rehabilitation Act retaliation claim for two reasons. (Def.'s Br. at 19–22.) First, the Secretary contends that it fails to plead any plausible retaliatory adverse employment action. (*Id.*) Second, the Secretary asserts that even if Kramer sufficiently alleged a retaliatory adverse employment action, she fails to allege that such action was causally connected to her protected activity. (*Id.*)

To plead a claim of retaliation under the Rehabilitation Act, a plaintiff must allege: "(1) participation in a protected activity; (2) that the defendant knew of the protected activity; (3) an adverse employment action; and (4) a causal connection between the protected activity and the adverse employment action." *Dooley v. Jetblue Airways Corp.*, 636 F. App'x 16, 19 (2d Cir. 2015) (quoting *Littlejohn v. City of New York*, 795 F.3d 297, 315–16 (2d Cir. 2015)) (Title VII); *Caskey v. County of Ontario*, 560 F. App'x 57, 58 (2d Cir. 2014) (ADA). An alleged retaliatory action is "an adverse employment action" under the Rehabilitation Act if it "includes conduct that is harmful to the point that it could well dissuade a reasonable worker from making or supporting a charge of discrimination." *Stanley v. Phelon*, No. 23-731-cv, 2024 WL 1453872, at *2 (2d Cir. Apr. 4, 2024) (summary order) (citing *Duplan v. City of New York*, 888 F.3d 613, 626–27 (2d Cir. 2018) (Title VII)).

Neither of the Secretary's arguments for dismissal of the retaliation claims are persuasive. The Amended Complaint plausibly alleges employment actions that would reasonably dissuade a worker from making a report of disability discrimination to an employer. It also plausibly alleges that the alleged retaliatory actions are causally connected to Kramer's protected activity. The retaliation claim thus survives the Secretary's Rule 12(b)(6) motion.

45

## 1. *Protected Activities*

"Protected activity is action taken to protest or oppose statutorily prohibited discrimination." *Natofsky*, 921 F.3d at 354. The Amended Complaint alleges that Kramer "engaged in protected activity by opposing and reporting the disability discrimination and harassment she was subjected to by the agency." (Am. Compl. ¶ 76.) It references to Kramer's "EEO activity" without specifically providing details concerning Kramer's filing of EEO complaints. (*See* Am. Compl. ¶¶ 17, 36, 48.) As discussed above, however, Kramer's EEO counseling intake forms, the August 1, 2018 and July 30, 2019 EEO complaints, and letters accepting and/or amending Kramer's two EEO complaints are integral to the Amended Complaint. *See supra* Discussion § II. These documents plainly demonstrate that Kramer engaged in the following protected activity to "protest" or "oppose" conduct that she perceived was disability discrimination:

- In February 2017, Kramer "took the initiative to address the harassment directly by meeting with Ms. Nadine Howell and Mr. Tarlentino to inform them that the conduct was unwelcome and must stop." (Am. Compl. ¶ 11.)

- On May 23, 2018, Kramer contacted an EEO counselor. (ECF No. 41-1.)

- On August 1, 2018, Kramer filed her first EEO Complaint, which she later amended. (ECF No. 41-2.)

- On June 3, 2019, Kramer contacted an EEO counselor for a second time and reported further allegedly discriminatory conduct by the agency. (ECF No. 41-4.)

- On July 30, 2019, Kramer filed her second EEO Complaint, which she later amended. (ECF No. 41-6.)

The Secretary does not dispute that Kramer's EEO activity constitutes protected activity under the Rehabilitation Act or that the agency had sufficient knowledge of that activity. (Def.'s Br. at 18–22.) However, the Secretary correctly argues that the Amended Complaint's allegations regarding Kramer's February 2017 meeting with Howell and Tarlentino "should not

46

be considered because it is time barred." (*Id.* at 20.) Kramer did not mention this meeting in either of her EEO complaints or otherwise indicate that this meeting was the basis for a retaliation claim. (*See* ECF Nos. 41-2 through 41-4 and 41-6 through 41-8.) Moreover, as addressed above, the Amended Complaint's allegations concerning retaliation or a retaliatory hostile work environment that relate to conduct that occurred *before* April 8, 2018 are time barred because the continuing violations doctrine does not apply to such conduct. *See supra* Discussion § IV.b.i.2.

Therefore, for purposes of Kramer's retaliation claims, I consider only the Amended Complaint's allegations that the agency retaliated against Kramer for the EEO activity in which she engaged on the following dates: May 23, 2018; August 1, 2018; June 3, 2019; and July 30, 2019.

### 2. *Adverse Actions*

Kramer argues that the Amended Complaint alleges two categories of adverse actions for purposes of her retaliation claims. First, she argues that it "details a pattern of retaliatory actions" that "limited [her] opportunities for advancement and monetary gain." (Pl.'s Opp'n at 17–18.) She refers to this claim as retaliation based upon a failure to promote. (*Id.* at 17.) Second, Kramer argues that the Amended Complaint alleges numerous instances of "unwarranted disciplinary actions, heightened scrutiny, false accusations, and [] a hostile work environment," which "collectively, satisfy the criteria for retaliation" because, "when viewed in the aggregate, [they] could deter a reasonably employee from engaging in protected activity." (*Id.* at 18–19.) Therefore, as previously noted, I construe the Amended Complaint to allege that Kramer suffered retaliation in the form of both discrete adverse actions and a retaliatory hostile work environment.

47

Regardless of whether the alleged adverse action is a discrete action or a retaliatory hostile work environment, the "definition of 'adverse action' in the [] antiretaliation context is broader than in the antidiscrimination context." *Carr v. N.Y.C. Transit Auth.*, 76 F.4th 172, 179 (2d Cir. 2023). To allege that an employer's conduct constitutes adverse action, a plaintiff must plausibly allege that "a reasonable employee would have found the challenged action materially adverse," which means the action "might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 67–68 (2006) ("*Burlington Northern*") (Title VII); *see also Stanley*, 2024 WL 1453872, at *2 (applying the same standard to Rehabilitation Act retaliation claims). Although "decisions of this Circuit" prior to *Burlington Northern* "limit[ed] unlawful retaliation to actions that affect the terms and conditions of employment," those decisions, "no longer represent the state of the law." *Carr*, 76 F.4th at 179 (quoting *Hicks v. Baines*, 593 F.3d 159 (2d Cir. 2010)). Moreover, the Supreme Court explained in *Burlington Northern* that the adverse action standard is an objective one, so as to "avoid[] the uncertainties and unfair discrepancies that can plague a judicial effort to determine a plaintiff's unusual subjective feelings." *Burlington Northern*, 548 U.S. at 68–69 ("We refer to reactions of a *reasonable* employee because we believe that the provision's standard for judging harm must be objective. An objective standard is judicially administrable" (emphasis in original)); *see also Carr*, 76 F.4th at 180.

An action is not materially adverse, however, where it constitutes merely a "trivial harm[]," meaning a "petty slight[] or minor annoyance[] that often take[s] place at work and that all employees experience." *Burlington Northern*, 548 U.S. at 68; *see also Moy v. Perez*, 712 F. App'x 38, 40 (2d Cir. 2017) (Title VII) (citing *Rivera v. Rochester Genesee Reg'l Transp. Auth.*,

743 F.3d 11, 25 (2d Cir. 2014)). In *Burlington Northern*, the Supreme Court explained that the

determination of whether an action is a "trivial harm" is context-specific, stating:

> The real social impact of workplace behavior often depends on a constellation of
> surrounding circumstances, expectations, and relationships which are not fully
> captured by a simple recitation of the words used or the physical acts performed.
> A schedule change in an employee's work schedule may make little difference to
> many workers, but may matter enormously to a young mother with school-age
> children. A supervisor's refusal to invite an employee to lunch is normally trivial,
> a nonactionable petty slight. But to retaliate by excluding an employee from a
> weekly training lunch that contributes significantly to the employee's professional
> advancement might well deter a reasonable employee from complaining about
> discrimination.

*Burlington Northern*, 548 U.S. at 69; *see also Vega v. Hempstead Union Free Sch. Dist.*, 801

F.3d 72, 90 (2d Cir. 2015) (same). For that reason, although "trivial harms" may not themselves

be materially adverse, "alleged acts of retaliation must be evaluated both separately and in the

aggregate, as even trivial acts may take on greater significance when they are viewed as part of a

larger course of conduct." *Rivera*, 743 F.3d at 25.

    The same standard applies to retaliatory hostile work environment claims. Indeed, the

Second Circuit has instructed that a "retaliatory hostile work environment" claim "must . . . be

treated identically to a claim that an employer took multiple retaliatory actions that were, in the

aggregate, materially adverse." *Carr*, 76 F.4th at 180. In *Carr*, the Second Circuit held that the

district court erred in analyzing a claim the plaintiff labeled a "*retaliatory* hostile work

environment claim" under the "severe or pervasive" standard, which applies to discriminatory

hostile work environment claims. *Carr*, 76 F.4th at 180–81 (emphasis added); *see, e.g., Banks*,

81 F.4th at 261 (recognizing that a discriminatory hostile work environment claim requires

showing "the workplace is permeated with discriminatory intimidation, ridicule, and insult that is

sufficiently severe or pervasive to alter the conditions of the victim's employment") (Title VII).

Instead, the Second Circuit instructed: "All that is relevant is whether the actions, taken in the

aggregate, are materially adverse and would dissuade a reasonable employee from making a complaint of discrimination." *Carr*, 76 F.4th at 181.

Applying these standards to the Amended Complaint, none of the conduct alleged to constitute retaliation by itself rises to the level of an "adverse action." But when considering the alleged acts *in the aggregate*, the Amended Complaint plausibly alleges that the conduct might dissuade a reasonable worker from complaining about discrimination and thereby constitutes an adverse action for purposes of Kramer's retaliatory hostile work environment claim. I address each alleged action in turn below.

### a. Failure to Promote

The Amended Complaint alleges that on April 25, 2018, Kramer "received notification from Mr. Joseph Tarlentino that she was not selected for the HR Specialist position." (Am. Compl. ¶ 14.) Because the Amended Complaint does not plausibly allege that the failure to promote Kramer to this role is causally connected to any timely protected activity, I do not address whether the failure to promote constitutes an adverse action. *See infra* Discussion § IV.b.iv.3.

Kramer also argues that the Amended Complaint "details a pattern of retaliatory actions that extend beyond the singular non-selection event." (Pl.'s Opp'n at 17.) The alleged retaliatory conduct includes the following:

- "Ms. Nadine Howell, the NCAC's Operation Chief, played a significant role in impeding Plaintiff's career progression. She discredited Plaintiff's chances of promotion by making false accusations about her work, character, and previous EEO activity to other recommending officials within the agency." (Am. Compl. ¶ 17.)

- Kramer "requested recommendation emails from coworkers . . . that contradicted Ms. Howell's claims. However, the agency denied access to these testimonies and notes from the interviews conducted at the Brookhaven Service Center." (Am. Compl. ¶ 18.)

- Kramer "was consistently overlooked for promotion based on her disability and prior protected activity." (Am. Compl. ¶ 19.)

- "[T]he agency and its management deliberately undermined her achievements and created obstacles to her professional growth and advancement." (Am. Compl. ¶ 23.)

- "[M]anagement's conduct . . . hindered Plaintiff's rightful progression to a higher position. Plaintiff's truthful presentation of facts, knowledge, character, skills, and abilities were distorted and used against her by the agency's management." (Am. Compl. ¶ 32.)

- And the "agency's management, especially Ms. Howell, continued to single out Plaintiff within the NCAC, limiting her opportunities for advancement and monetary gain in retaliation for her protected activity." (Am. Compl. ¶ 47.)

Setting aside the allegation that the IRS failed to promote Kramer on April 25, 2018, none of these allegations—with the possible exception of the allegation regarding denial of recommendation emails—pleads with any particularity the specific actions that Ms. Howell and the agency took to hinder Kramer's career advancement in retaliation for her protected activity. The Amended Complaint does not allege that any other opportunities for promotion existed, that Kramer was passed over for other positions, or that her salary was impacted in any way. *See Jaeger v. N. Babylon Union Free Sch. Dist.*, 191 F. Supp. 3d 215, 228–9 (E.D.N.Y. 2016) (allegations that plaintiff was "prevented from obtaining unspecified promotions or other employment opportunities" that were "lacking in any supporting factual detail . . . are insufficient to satisfy [plaintiff's] pleading burden" because such allegations are "wholly conclusory" and "speculative"); *Ahmad v. N.Y.C. Health & Hosps. Corp.*, No. 20-cv-675, 2021 WL 1225875, at *18 (S.D.N.Y. Mar. 31, 2021) (same).[23] The Amended Complaint also fails to

---

[23] The district courts in both *Jaeger* and *Ahmad* held that conclusory allegations of this kind were insufficient to allege an adverse action sufficient for a discrimination or disparate treatment claim. *Jaeger*, 191 F. Supp. 3d at 228–29; *Ahmad*, 2021 WL 1225875, at *18. A lower standard is applied to determine whether a complaint plausibly alleges an adverse action for a retaliation

allege when these actions occurred—making it impossible to determine if they were exhausted—or, in some cases, who performed the acts in question. As a result, these allegations fail to "give notice of the basic events and circumstances on which [Kramer] relies." *Patane v. Clark*, 508 F.3d 106, 116 (2d Cir. 2007) (holding that such allegations are "legally insufficient under 12(b)(6)" to allege a retaliatory employment action). Perhaps for this reason, none of these allegations appear within the list of "[a]dverse [a]ctions" in paragraphs 51 to 64 of the Amended Complaint. (*See* Am. Compl. ¶¶ 51–64.)

Thus, the allegations at issue are conclusory and insufficient to plausibly allege any adverse action supporting Kramer's retaliation claims.

        b.   <u>Derogatory Comments, Increased Scrutiny, and Accusations of Lying</u>

Kramer next argues that management's conduct towards her after she contacted an EEO counselor involved numerous adverse actions that together subjected her to a "continuous pattern of antagonism" involving "unwarranted disciplinary actions, heightened scrutiny, false accusations, and [] a hostile work environment." (Pl.'s Opp'n at 19 (citing *Duplan*, 888 F.3d at

---

claim. *See supra* Discussion § IV.b.iv.2. However, *Jaeger* and *Ahmad* are instructive concerning the particularity required to satisfy a plaintiff's "pleading burden" and the principle that a plaintiff cannot rely on speculative allegations to plausibly allege an adverse action. *Jaeger*, 191 F. Supp. 3d at 228–9; *Ahmad*, 2021 WL 1225875, at *18.

613)[24]; *see also* Am. Compl. ¶¶ 21, 24–31, 34, 43, 57–62, 77.)[25] The Secretary responds that none of the allegations concerning management's conduct towards Kramer following her first EEO action establish an adverse employment action, but the Secretary fails to address in either its initial brief or its reply whether the allegations *in the aggregate* plausibly allege a retaliatory hostile work environment that would constitute a materially adverse action. (Def.'s Br. at 21–22; Def.'s Reply at 7–8.)

---

[24] Although Kramer cites *Duplan* in support of her argument that this "continuous antagonism" constituted an adverse employment action, Pl.'s Opp'n at 19, in *Duplan*, the defendants only disputed whether plaintiffs had "adequately alleged the second prong of th[e] test, which goes to causation." *See Duplan*, 888 F.3d at 625–26. Nonetheless, I find its reasoning that a "drumbeat of retaliatory animus" can give rise to an inference of causation analogous to decisions by the Second Circuit that employment actions must be considered in the aggregate when determining whether they were materially adverse. *Id. at* 626.

[25] Kramer also alleges that these actions led to "immense harm and excessive stress . . . resulting in increased syncope episodes and amplified symptoms of her bi-polar condition." (Am. Compl. ¶ 33.) Kramer sought medical attention and a leave of absence for five days of work as a result of the harassment she allegedly experienced, and she was subsequently diagnosed with vertigo and required additional medication. (Am. Compl. ¶ 37.) This allegation concerns Kramer's subjective response to management's behavior and is thus not relevant to the determination of whether Backofen's conduct was "materially adverse," which is an objective standard. *Burlington Northern*, 548 U.S. at 68–69 ("We refer to reactions of a *reasonable* employee because we believe that the provision's standard for judging harm must be objective. An objective standard is judicially administrable. It avoids the uncertainties and unfair discrepancies that can plague a judicial effort to determine a plaintiff's unusual subjective feelings."); *see also Carr*, 76 F.4th at 180 (same).

The Secretary makes the same error when it argues that she was not dissuaded by any of management's conduct because "although she claims she was subjected to such behavior throughout the year following her first EEO complaint in May 2018, she still brought a second EEO complaint in June 2019 against the same supervisors she claims were responsible for the heightened scrutiny, false accusations, and creation of a hostile work environment." (Def.s' Reply at 8.) By contrast, the standard for determining whether employer action is an adverse action supporting a retaliation claim is whether the action "could well dissuade a reasonable worker from making or supporting a charge of discrimination." *Muldrow*, 601 U.S. at 357 (citing *Burlington N.*, 548 U.S. at 68).

Considered individually, the Secretary is correct that some—though not all—of the discrete actions in the Amended Complaint do not sufficiently allege a materially adverse employment action to support a Rehabilitation Act retaliation claim when considered in isolation. Nevertheless, in the aggregate, the allegations concerning IRS management's treatment of Kramer following her report to the EEO counselor on May 23, 2018 plausibly allege that Kramer's managers sustained a retaliatory hostile work environment that might have "dissuade[d] a reasonable worker from making or supporting a charge of discrimination." *Burlington Northern*, 548 U.S. at 68; *Stanley*, 2024 WL 1453872, at *2. Because alleged acts of retaliation "need to be considered both separately and in the aggregate, as even minor acts of retaliation can be sufficiently substantial in gross," *Stanley*, 2024 WL 1453872, at *2, I address each of the allegations concerning management's conduct toward Kramer in turn.

I consider first the Amended Complaint's allegations that "Ms. Kramer disagreed with the appraisal provided by Mr. Tarlentino," (Am. Compl. ¶ 61), and that Ms. Howell "continued to question and criticize Ms. Kramer's work, despite receiving numerous customer service congratulations," (*id.* ¶ 58). In *Carr*, the Second Circuit found that "diminishing performance ratings" and an employer's "hostile tone in emails" did not constitute an adverse employment action for the purpose of a Title VII retaliation claim where those actions "were the result of generally applicable workplace policies" and the plaintiff had "not adduced evidence that these policies were applied to her and not others." *Carr*, 76 F.4th at 180; *see also Jones v. Brookhaven Sci. Assocs., LLC*, No. 2:23-cv-04194, 2024 WL 4145777, at *15 (E.D.N.Y. Sept. 10, 2024) (finding that criticism of a plaintiff's work, when alleged without a negative performance review was akin to the facts in *Carr*). In *Vega*, however, the Second Circuit found that "[a] negative evaluation, or the threat of a negative evaluation, while not an adverse employment action that

54

affects terms and conditions of employment, might dissuade a reasonable worker from making or supporting a charge of discrimination." *Vega*, 801 F.3d at 92. Here, Kramer's disagreement with her performance appraisal is more akin to the "negative evaluation" in *Vega* than the "diminishing performance ratings" in *Carr* because unlike in *Carr*, the Amended Complaint alleges that Mr. Tarlentino's efforts to "discredit her performance" was "selectively targeted [at] Plaintiff," who's performance "far exceeded that of her colleagues, as evidenced by the significantly higher volume of work she handled." (Am. Compl. ¶ 22–23; *see also id.* ¶ 41 (alleging that Kramer received "advanced pay setting and qualification classes, which were not extended to many of the new hires").) Ms. Howell's alleged criticism of Kramer could have dissuaded a reasonable worker from supporting a charge of discrimination because the criticism occurred alongside a poor performance review.[26]

By contrast, the Amended Complaint's allegation that management made derogatory comments towards Kramer and falsely accused her of lying on her resume do not, in isolation, rise to the level of materially adverse employment actions for purposes of Kramer's retaliation claims. (*See* Am. Compl. ¶ 59–60, 62.) With respect to the former, these alleged statements

---

[26] The Court previously found that an allegation in the original Complaint stating that Kramer was given a lower annual rating in 2018 than she deserved did not constitute a materially adverse action because the Complaint "failed to allege facts demonstrating [Kramer] was actually given a poor performance rating, only that she was rated lower than she felt she deserved," and "failed to demonstrate how a higher rating, but a rating still less than what she believes she deserved, harmed her in any way." (R&R at 12.) Although the Amended Complaint likewise does not describe the performance appraisal as poor and instead only alleges that the appraisal "did not accurately reflect [Kramer's] performance," (Am. Compl. ¶ 66), it also alleges that Ms. Howell "deliberate[ly] elevate[d] customer service tickets to Ms. Howell to create a false narrative of poor performance," (*id.* ¶ 22). These allegations, read alongside the allegations that Kramer's work was subjected to targeted criticism, plausibly allege that the performance evaluation was poor. Furthermore, the Amended Complaint need not allege that the appraisal "harmed" the terms of Kramer's employment (R&R at 12) to allege an action that would dissuade her from supporting a charge of discrimination.

include that meeting minutes falsely referred to Kramer "stuttering and seem[ing] confused," that management told Kramer she was "rambling" and interrupting her supervisor, and that her claims were "all in [her] head." (ECF No. 41-6 at 2.) The Secretary argues that these statements do not constitute adverse employment actions, collecting cases for the proposition that reprimands and offensive statements do not, standing alone, rise to the level of adverse action. (Def.'s Br. at 22 (citing *Jaeger*, 191 F. Supp. 3d at 235–36 (workplace slights of criticizing and monitoring plaintiff's actions and of making "false accusation[s]" about the plaintiff, including of "lying and violating school policies," were not retaliatory adverse employment actions); *Blake v. Potter*, No. 03-cv-7733, 2007 WL 2815637, at * 8 (S.D.N.Y. Sept. 25, 2007) ("Negative or otherwise insulting statements are hardly even actions, let alone 'adverse actions.'")).)[27] In light of the Second Circuit's determination in *Carr* that "diminishing performance ratings" and an employer's "hostile tone in emails" would not dissuade a reasonable employee from making a charge of discrimination, neither would the specific alleged derogatory statements or management's accusations that Kramer lied on her resume, when considered in isolation. 76 F.4th at 180.

The same is true of the Amended Complaint's allegations that management "exaggerated any errors made by Ms. Kramer" and excessively monitored her work by "insist[ing] on having

---

[27] The Secretary also cites *Gentile v. Porter*, 509 F. Supp. 2d 221, 242 (E.D.N.Y. 2007) for the proposition that "reprimands, threats of disciplinary action, and excessive scrutiny do not constitute adverse employment actions." (Def.'s Br. at 22 (citing *Gentile*, 509 F. Supp. 2d at 242).) *Gentile* is not instructive because the district court there required that an adverse action for a retaliation claim effect the "privileges or duties of employment" such as through "termination . . . , a demotion . . . a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices." 509 F. Supp. 2d at 239. It thereby applied an incorrect standard in light of *Carr*, which held that "prior decisions of this circuit" limiting unlawful retaliation acts to those alleging actions "that affect the terms and conditions of employment, no longer represent the state of the law . . . ." 76 F.4th at 179.

additional individuals present" in Kramer's meetings (Am. Compl. ¶¶ 24–25, 34, 57.)[28] Courts in the Second Circuit have repeatedly found that allegations of an employer's increased monitoring of an employee while at work do not on their own constitute an adverse employment action for the purpose of a Title VII retaliation claim. *See e.g.*, *Stern v. State Univ. of N.Y.*, No. 16-cv-5588, 2018 WL 4863588, at *16 (E.D.N.Y. Sept. 30, 2018) (finding that allegations of "excessive monitoring and scrutiny of [an employee's] timesheets" was not an adverse action); *Feliciano v. City of New York*, No. 14-cv-6751, 2015 WL 4393163, at *9 (S.D.N.Y. July 15, 2015) (allegations of "excessively scrutinizing [plaintiff] in the workplace" did not constitute a "*materially* adverse action" (emphasis in original)); *Fahrenkrug v. Verizon Servs. Corp.*, 652 F. App'x 54, 57 (2d Cir. 2016) (allegations that an employer was "monitoring or recording the computer [an employee] used at work . . . d[id] not show an adverse employment action" for a retaliation claim).

While most of management's alleged conduct toward Kramer does not, on its own, constitute materially adverse employment actions for purposes of her retaliation claims, when considered *in the aggregate*, the alleged conduct created a retaliatory hostile work environment that plausibly "dissuaded a reasonable worker from making or supporting a charge of discrimination." *Carr*, 76 F.4th at 180 (quoting *Burlington Northern*, 548 U.S. at 68); *see also Stanley*, 2024 WL 1453872, at *2 (same under Rehabilitation Act); *Rivera*, 743 F.3d at 25 ("[E]ven trivial acts may take on greater significance when they are viewed as part of a larger course of conduct."); *Laudadio*, 677 F. Supp. 2d at 613 (finding that "a reasonable juror could

---

[28] The Amended Complaint also includes specific allegations that management subjected Kramer's Career Learning Plan (CLP) to greater scrutiny than other employees and that Tarlentino insisted on "face-to-face meeting[s]" despite Kramer's "physical limitations and the associated joint pain." (Am. Compl. ¶ 26–28.) However, the Amended Complaint fails to allege when these allegations occurred, so it is not clear whether they are time barred.

find that the alleged acts taken collectively were not merely slights or justified reprimands, but materially adverse actions," even where the acts taken individually "may be insufficient to establish a materially adverse action"); *Jones*, 2024 WL 4145777, at \*16 (same). Here, the sheer number of allegations raised within the Amended Complaint contribute to this conclusion. Moreover, Kramer alleges that rambling and stuttering are two "of [her] disability challenges, which Mr. Tarlentino [was] aware [of]." (ECF No. 41-6 at 2). Just as a schedule change might "matter enormously to a young mother with school-age children," derogatory comments of this kind, which might "make little difference to many workers," could "matter enormously," *Burlington Northern*, 548 U.S. at 69, to a person who has informed an employer that rambling and stuttering are a "disability challenge[]" the person has, *id.*, particularly against the backdrop of the "continuous pattern of antagonism" alleged in the Amended Complaint—including Kramer's performance appraisal and the accusations of lying, *Duplan*, 888 F.3d at 626.[29]

Thus, the Amended Complaint's allegations concerning the conduct of Kramer's managers towards her following her EEO activity plausibly allege a retaliatory hostile work environment that was materially adverse as required to plead a Rehabilitation Act retaliation claim.

### 3. Causation

The Secretary argues that even if the Amended Complaint sufficiently alleges any materially adverse action that could support Kramer's retaliation claim, it fails to plausibly allege

---

[29] The Secretary argues that the Amended Complaint also fails to plausibly state a retaliation claim because it "has not alleged that she suffered any consequence to her employment as a result of these actions." (Def.'s Br. At 22.) However, the standard is not whether Kramer suffered an employment consequence but rather conduct that would "dissuade a reasonable worker from making or supporting a charge of discrimination." *Carr*, 76 F.4th at 179. Here, the personal injury from the aggregate of all the Amended Complaint's timely allegations satisfies that standard even without a material impact on Kramer's employment status.

a causal connection between any adverse action and Kramer's protected activities. (Def.'s Br. at 19–21, 22.) Kramer responds that the Amended Complaint pleads a causal connection between a protected activity and the adverse actions she experienced because there was a close temporal proximity between the two. (Pl.'s Opp'n. at 18.)

To establish causation, the fourth element of a Rehabilitation Act retaliation claim, a "plaintiff must plausibly allege that the retaliation was a 'but-for' cause of the employer's adverse action" meaning that "the adverse action would not have occurred in the absence of the retaliatory motive." *Vega*, 801 F.3d at 90–91 (citing *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 360 (2013) and *Zann Kwan v. Andalex Grp. LLC*, 737 F.3d 834, 846 (2d Cir.2013)). This can be done for purposes of a Rehabilitation Act retaliation claim either "(1) indirectly, by showing that the protected activity was followed closely by discriminatory treatment, or through other circumstantial evidence such as disparate treatment of fellow employees who engaged in similar conduct; or (2) directly, through evidence of retaliatory animus directed against the plaintiff by the defendant." *Natofsky*, 921 F.3d at 353.

The Second Circuit has "not drawn a bright line to define the outer limits beyond which a temporal relationship is too attenuated to establish a causal relationship between the exercise of a federal constitutional right and an allegedly retaliatory action." *Littlejohn*, 795 F.3d at 319. In *Vega*, the Second Circuit found that the plaintiff sufficiently alleged a causal relationship between his filing and later amending an EEOC charge and his employer's retaliatory actions because the plaintiff alleged that the employer's actions occurred two to three months after the EEOC charge was either filed or amended. *Vega*, 801 F.3d at 92. In *Espinal v. Goord*, the Second Circuit found that the passage of six months between a plaintiff's protected activity and an employer's adverse action was sufficient to establish causation. 558 F.3d 119, 129 (2d Cir.

59

2009). By contrast, a "gap of some sixteen months is too long to support a retaliation claim based on solely on temporal connection." *Riddle v. Citigroup*, 640 F. App'x 77, 79 (2d Cir. 2016).

Additionally, because the burden for establishing a prima facie case of retaliation is "de minimis," the Second Circuit has held that where adverse actions occur against a "backdrop of continuing antagonism and frustration," those allegations can "establish a drumbeat of retaliatory animus from which a plausible inference of causation can be drawn." *Duplan*, 888 F.3d at 626.

Applying these standards to the Amended Complaint, I find that the Amended Complaint plausibly alleges causation with respect to all alleged adverse actions other than the failure to promote Kramer.

### a.  Failure to Promote

With respect to Kramer's retaliation claims premised on the denial of her request for a promotion, the Amended Complaint does not sufficiently allege causation. As discussed above, the only concrete instance of failure to promote alleged within the Amended Complaint is the failure to select Kramer for the HRS position in April 2018. (Am. Compl. ¶ 14.) However, Kramer's earliest protected activity that survives exhaustion—Kramer's act of seeking EEO counseling—did not occur until May 2018. Accordingly, it is impossible for Kramer to argue that her initial EEO contact was a but-for cause of the failure to promote her, which had already taken place. *See Vega*, 801 F.3d at 90.

For the remainder of the Amended Complaint's allegations concerning the failure to promote Kramer, because the Amended Complaint and documents incorporated by reference in it or integral to it all fail to allege the specific positions for which Kramer was passed over or when she was not selected for any such positions, the Amended Complaint similarly fails to plausibly allege a temporal proximity between these conclusory allegations and Kramer's EEO

activity. *See Vega*, 801 F.3d at 91 (plaintiff can "demonstrate causation through temporal proximity").

        b.  <u>Derogatory Comments, Increased Scrutiny, and Accusations of Lying</u>

      With respect to the remaining allegations within the Amended Complaint, the Secretary asserts in conclusory fashion that "Plaintiff has failed to plead any causal connection between protected activity in February 2017, August 2018, or June 2019 and such actions." (Def.'s Br. at 22.) The Secretary does not offer any further argument or explanation for its position that the Amended Complaint fails to plead causation for these other allegations.

      The Amended Complaint plausibly alleges causation between Kramer's protected EEO activity in August 2018 and July 2019 and subsequent alleged retaliatory conduct. A prior judge of this Court to whom this case was assigned previously adopted Judge Tiscione's recommendation to find that the original Complaint plausibly alleged either temporal proximity or retaliatory animus for several of the alleged retaliatory actions. (R&R at 11, 14 (discussing causation for Tarlentino's scrutiny of Kramer's CLP and for management's derogatory statements).) The Amended Complaint also alleges that management excessively scrutinized and criticized Kramer's work and made derogatory comments towards Kramer all either during the pendency of Kramer's EEO actions or within three months of the filing of one of her two EEO complaints. *See* Am. Compl. ¶ 57–59; *Vega*, 801 F.3d at 92 (holding that the plaintiff sufficiently alleged a causal relationship between his filing and later amendment of an EEOC charge and his employer's retaliatory actions alleged to have occurred two to three months after the EEOC charge was either filed or amended). For the remainder of the adverse employment actions, which transpired between December 2019 and April 2020, even though the same temporal proximity may not exist with respect to Kramer's EEO actions, the "backdrop of continuing

antagonism" from the derogatory comments the Amended Complaint alleges "establish a drumbeat of retaliatory animus from which a plausible inference of causation can be drawn." *Duplan*, 888 F.3d at 626.

Therefore, the Amended Complaint plausibly alleges that the derogatory comments, increased scrutiny, and accusations of lying that IRS management subjected Kramer to were causally connected to Kramer's EEO actions. Thus, I grant the Secretary's Motion to Dismiss Kramer's Rehabilitation Act retaliation claims challenging the failure to promote Kramer, but deny the motion with respect to Kramer's retaliation claims on all other grounds.

  c. <u>Leave to Amend</u>

Although I dismiss Kramer's claims for disparate treatment, failure to accommodate, and hostile work environment because the Amended Complaint fails to allege a physical or mental impairment that *substantially limits* one or more of Kramer's major life activities, I will grant leave to amend these claims.

Rules 15 and 16 of the Federal Rules of Civil Procedure govern a plaintiff's ability to amend the complaint, and "when read together, set forth three standards for amending pleadings that depend on when the amendment is sought." *Sacerdote v. N.Y. Univ.*, 9 F.4th 95, 115 (2d Cir. 2021).

First, Rule 15(a)(1) permits "a plaintiff [to] freely amend her pleadings . . . as of right without court permission" twenty-one days after a complaint is served or twenty-one days after service of a responsive pleading or motion under Rule 12(b), (e), or (f), Fed. R. Civ. P. *Sacerdote*, 9 F.4th at 115.

Second, after the time to amend as of right has passed—"either upon expiration of a specified period in a scheduling order or upon expiration of the default period set forth in Rule

15(a)(1)(A)"—a plaintiff seeking to amend a complaint must either request leave from the court or obtain the opposing party's written consent. *Sacerdote*, 9 F.4th at 115; *see also* Fed. R. Civ. P. 15(a)(2). Rule 15(a)(2) sets forth a lenient standard under which "[t]he court should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). "Unless there is a showing of bad faith, undue delay, futility or undue prejudice to the non-moving parties, the district court should grant leave to amend." *Adlife Mktg. & Commc'ns Co. v. Best Yet Mkt., Inc.*, No. 17-cv-2987, 2018 WL 4568801, at *1 (E.D.N.Y. Sept. 24, 2018) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)); *see also Noto v. 22nd Century Grp., Inc.*, 35 F.4th 95, 107 (2d Cir. 2022) ("[D]enial of leave to amend is proper where the request gives no clue as to how the complaint's defects would be cured."). For this reason, the "[Second] [C]ircuit strongly favors liberal grant of an opportunity to replead after dismissal of a complaint under Rule 12(b)(6)." *Noto*, 35 F.4th at 107.

However, Rule 15(a)(2)'s period of "liberal" amendment ends "if the district court issues a scheduling order setting a date after which no amendment will be permitted." *Sacerdote*, 9 F.4th at 115. After that date expires, Rule 16 also applies, and a court must balance the "liberal" amendment standard of Rule 15 with Rule 16(b)(4)'s requirement that the plaintiff show "good cause" for an extension of the deadline to amend. Fed. R. Civ. P. 16(b)(4); *Holmes v. Grubman*, 568 F.3d 329, 334–35 (2d Cir. 2009); *see also Pasternack v. Shrader*, 863 F.3d 162, 174 n.10 (2d Cir. 2017) (plaintiff must satisfy both Rules 15 and 16 to be permitted to amend after the deadline in the scheduling order has passed). The purpose of Rule 16(b)(4) is to "offer a measure of certainty in pretrial proceedings, ensuring that at some point both the parties and the pleadings will be fixed." *Parker v. Columbia Pictures, Indus.*, 204 F.3d 326, 339–40 (2d Cir. 2000). The good cause standard permits the trial court to exercise "discretion to ensure that limits on time to amend pleadings do not result in prejudice or hardship to either side." *Kassner v. 2nd Ave.*

*Delicatessen Inc.*, 496 F.3d 229, 243–44 (2d Cir. 2007). The "primary consideration" when determining good cause is "whether the moving party can demonstrate diligence" in seeking leave to amend. *Id.* at 244; *see also Parker*, 204 F.3d at 340.

> The Court's December 7, 2023 Order setting a briefing schedule stated as follows:
>
> Plaintiff shall file any second amended complaint no later than February 9, 2024. There shall be no further opportunity to amend . . . If Plaintiff does not file a second amended complaint, Plaintiff shall oppose the motion to dismiss by February 9, 2024 . . . .

(Elec. Order Dec. 7, 2023.) The December 7, 2023 Order set a briefing schedule and was not the type of "scheduling order setting deadlines for subsequent proceedings in the case, including joinder of parties and amendments to the pleadings" that is governed by Rule 16(b). *Parker*, 204 F.3d at 339. Moreover, Rule 16(b)'s purpose to "offer a measure of certainty in pretrial proceedings" and to ensure the pleadings at some time become "fixed" so as to avoid prejudice is not implicated here because discovery has not yet commenced and remains stayed until resolution of the motion to dismiss currently at issue. *Parker*, 204 F.3d at 240.

Accordingly, the Court considers whether to permit leave to amend under the Rule 15(a)(2) standard, which authorizes leave to amend when "justice so requires." Fed. R. Civ. P. 15(a)(2). This standard is satisfied here. Kramer's original Complaint alleged significantly more facts than the Amended Complaint about whether Kramer has a qualifying disability under the Rehabilitation Act. (*See* Compl. ¶¶ 8–11 (reciting Kramer's specific physical disabilities including pain when "standing for more than 10 minutes," "90% nerve damage in the right arm," and bipolar disorder with symptoms including "mood swings, high anxiety, depression, panic attacks, [and] rambling and racing thoughts").) Likely for this reason, the Secretary did not move to dismiss the original Complaint for failure to plead a qualifying disability, and the R&R, in reciting the facts alleged in the original Complaint, found that Kramer "has both mental and

physical disabilities including bipolar disorder, vaso-vagal syncope disorder, chronic migraines and pain, and osteoarthritis, all of which limit her ability to engage in daily life activities." (R&R at 1.) Kramer likely could amend the Amended Complaint to plead sufficient facts to plausibly allege a "physical or mental impairment that substantially limits one or more of [Kramer's] major life activities." *Veldran*, 839 F. App'x at 579. Accordingly, it is in the interest of justice to permit Kramer to amend the Amended Complaint to cure deficiencies in her disparate treatment, hostile work environment, and failure to accommodate claims, including the dearth of factual allegations that plead a plausible qualifying disability. *See* Fed. R. Civ. P. 15(a)(2). Although the Court has not reached the Secretary's other arguments for dismissal of these claims, any second amended complaint filed by Kramer must address any additional deficiencies in the disparate treatment, hostile work environment, and failure to accommodate claims identified in the Secretary's Motion to Dismiss the Amended Complaint. There shall be no further opportunity to amend absent unforeseen and extraordinary circumstances.

## CONCLUSION

For the reasons set forth above, the Secretary's Motion to Dismiss (ECF No. 39) is granted in part and denied in part as follows: (1) Kramer's claims for injunctive relief are dismissed for lack of subject matter jurisdiction under Rule 12(h), Fed. R. Civ. P.; (2) Kramer's Rehabilitation Act claims for disparate treatment, failure to accommodate, and hostile work environment are dismissed without prejudice under Rule 12(b)(6) and with leave to file a second amended complaint; (3) the Secretary's Motion is denied with respect to Kramer's damages claims for retaliation under the Rehabilitation Act with respect to all allegations of retaliation that occurred after May 23, 2018, except those dealing with the failure to promote Kramer; and

(4) the Secretary's Motion to dismiss under Rule 12(b)(6) is granted with prejudice on all other

grounds.

Dated: Central Islip, New York
September 4, 2025

                                  */s/ Nusrat J. Choudhury*
                                  NUSRAT J. CHOUDHURY
                                  United States District Judge